FILED

OCT 14 2025

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

fees paid
no process
# 830

:Fareed :Sepehry-Fard©, *Sui Juris.*
c/o 12309 Saratoga Creek Dr.
Saratoga, the State of California, Santa Clara County (Zip code Exempt DMM 602 SEC 1.3(e))

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| :Fareed :Sepehry-Fard©. | Case No. |
| Plaintiff | Judge: |
| NATIONSTAR MORTGAGE LLC, a Delaware corporation; CLEAR RECON CORP; U.S. BANK NATIONAL ASSOCIATION, AS PURPORTED TRUSTEE FOR GREENPOINT MORTGAGE FUNDING TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR2; XOME INC.; and DOES 1 through 100, inclusive. | **Claim** |
|  | **TRIAL BY JURY DEMANDED** |
|  | At Law Venue And Jurisdiction |
| Defendant | |

▶C   25 08783
AGT

~~CV-25 80021MISC JSC~~

### NOTICE TO AGENT IS NOTICE TO PRINCIPAL AND
### NOTICE TO PRINCIPAL IS NOTICE TO AGENT

| STATE OF CALIFORNIA | ) | |
|---|---|---|
|  | ) ss. | **AFFIDAVIT OF TRUTH in Support of Claim** |
| COUNTY OF SANTA CLARA | ) | |

### Claim

*Comes Now* Plaintiff :Fareed :Sepehry-Fard., beneficiary., *Sui Juris* [1], a Man, living flesh and blood actual, immortal soul, actual man, non commercial strawman, non business partner beneficiary surety liable party of any legal fiction entity, non legal fiction creditor and secured party, a natural actual man who is non 14th Amendment person entity under the United States Constitution and its Amendments nor any other constitution and amendments, do hereby make a Complaint and alleges the following:

### THE PARTIES

#### A. Plaintiff

---

[1] *"SUI JURIS. One who has all the rights to which a freemen is entitled; one who is not under the power of another, as a slave, a minor, and the like."* Source: Bouvier's Law Dictionary 1856 Edition.

1.  Plaintiff, *Sui Juris*, a Man, living flesh and blood actual, immortal soul, actual man, non commercial strawman, non business partner beneficiary surety liable party of any legal fiction entity, non legal fiction creditor and secured party, a natural actual man who is non 14th Amendment person entity under the United States Constitution and its Amendments nor any other constitution and amendments, who is a state of california Citizen and not a US Citizen.

2.  :Fareed :Sepehry-Fard., beneficiary.,  has been the victim of a conspiracy by all Defendants to deprive: Fareed :Sepehry-Fard., beneficiary.,  from life, liberty, pursuit of happiness and :Fareed :Sepehry-Fard's.,  right to his private land and assets.

3.  Undersigned Plaintiff, claiming protection under witness standing and capacity, report wrongful acts herein which on information and belief are in violation of Federal Civil Rights guaranteed by Constitution to be provided to Plaintiff by any and all officers under personal oath and employment contracts to the public trust each serves due to unlawful Defendants' acts damaging Plaintiff economically, physically and emotionally.

4.  Plaintiff lives at 12309 Saratoga Creek Dr., Saratoga, State of California,  Santa Clara County (Zip code Exempt DMM 602 sec 1.3(e)) where Plaintiff intents to remain.

5.  The Plaintiff is :Fareed :Sepehry-Fard., beneficiary., who is the lawful title owner of land in this action, 12309 Saratoga Creek Dr., City of Saratoga, state of California, Santa Clara County (Zip code Exempt DMM 602 sec 1.3(e))

**B. DEFENDANTS**

6.  Defendant NATIONSTAR MORTGAGE LLC., a Delaware corporation, as alleged servicer, ("Nationstar")  8950 CYPRESS WATERS BLVD. DALLAS, TX 75019 is under the jurisdiction of state of Texas and is sued as a fictitious entity, alleged to be a debt collector acting as alleged debt collector under color of state law at all times relevant herein.

7.  The Defendant is NATIONSTAR MORTGAGE LLC wishing to lay claim on Plaintiff's land as a real party of interest.

8.  The Defendant is U.S. BANK NATIONAL ASSOCIATION, AS PURPORTED TRUSTEE FOR GREENPOINT MORTGAGE FUNDING  TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR2   an undetermined Trustee acting as a Trustee de son tort, citizenship unknown, and receives mail c/o 800 Nicollet Mall, Minneapolis, MN 55402, alleged to be a debt collector as the alleged trustee of the  alleged debt, acting as alleged debt collector under color of state law at all times relevant herein.

1

9.  The Defendant is U.S. BANK NATIONAL ASSOCIATION, AS PURPORTED TRUSTEE FOR GREENPOINT MORTGAGE FUNDING  TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR2  wishing to lay claim on the land as a real party of interest.

10. The Defendant is CLEAR RECON CORP, 3333 CAMINO DEL RIO SOUTH SUITE 225 SAN DIEGO, CA 92108, is under the jurisdiction of state of California, is sued as a fictitious entity, alleged to be a debt collector acting as alleged debt collector under color of state law at all times relevant herein.

11. The Defendant is CLEAR RECON CORP is alleged to be either fully owned by Defendant NATIONSTAR MORTGAGE LLC. or has Defendant Nationstar as an investor.

12. The Defendant is CLEAR RECON CORP, and is  alleged to be fully controlled by Defendant Nationstar.

13. The Defendant is CLEAR RECON CORP wishing to lay claim on Plaintiff's land as a real party of interest.

14. The Defendant is XOME INC., 750 HIGHWAY 121 BYPASS SUITE 100 LEWISVILLE, TX 75067, is under the jurisdiction of state of Texas, is sued as a fictitious entity, alleged to be a debt collector acting as alleged debt collector under color of state law at all times relevant herein.

15. The Defendant is XOME INC. is alleged to be fully owned by Defendant NATIONSTAR MORTGAGE LLC.

16. The Defendant is XOME INC. wishing to lay claim on Plaintiff's land as a real party of interest.

17. The true names and capacities, whether individual, corporate, partnership, associate, or otherwise of Defendants DOES 1 through 100, are unknown to Plaintiff who sues each Defendant by such fictitious names.

18. Plaintiff is informed and believe and based thereon allege each of the Defendants designated herein as a fictitiously named Defendant is, and in some manner, was responsible for the events and happenings referred to herein, either contractually or tortuously.  When Plaintiff ascertains the true names and capacities of DOES 1 through 100, he will amend this Claim accordingly.

19. Plaintiff is informed and believes and based thereon alleges that Defendants and each of them, are, and at all times herein mentioned were, the agents, joint venturers, officers, members representatives, servants, consultants or employees of their co-defendants, and in committing the

2

VERIFIED CLAIM

1   acts herein alleged, were acting within the scope of such affiliation with the knowledge, permission,
2   consent or subsequent ratification of their co-defendants.
3
4                                    **I. JURISDICTION AND VENUE**
5
6   20. Plaintiff's suit is based on Defendants' Violation of inter alia,: Article VI Clause 2 – Land Patent
7       and Treaty Laws at Article VI Clause 2 as to Plaintiff's land patent on his sovereign land;
8       Sherman Anti Trust Act; Bid Rigging; American Disability Act (ADA) and Stay Orders;
9       FDCPA; RESPA and Regulation Issued Pursuant to it; The Clayton Antitrust Act ; Unfair
10      Competition Law ("UCL"); California Civil Code Section 2923.6; California Civil Code Section
11      2923.7; California Civil Code Section 2923.55; California Civil Code Section 2924f; California
12      Civil Code Section 2924 (h) Subdiv.(g); Negligence; Accounting; Unfair Business Practices;
13      Quiet Title; Set Aside Sale; Negligent Infliction of Emotional Distress; Identity Theft; Breach of
14      fiduciary duty pursuant to California Commercial Code 3307 and recoupment; California Civil
15      Code §1812.600(a); California Business & Professions ("B&P") Code sections 22350; Unfair
16      Competition Law ("UCL"); Fraud by Omission and Nondisclosure (Fraudulent Concealment);
17      Emotional Distress; Intentional Infliction of Emotional Distress; 5th Amendment Violation and
18      Injunction; Mail Fraud; Wire Fraud; Violation of Business and Professional Code Section 17200;
19      Violation of California Home Owner Bill of Rights ("HBOR"); Violation of Penal Code Section
20      484 and Trebling Pursuant to Section 496, Subdivision (C); Malicious and Unlawful Conduct;
21      Aiding and Abetting Tort; Tort; Report of Unlawful Adverse Credit Reporting to Credit
22      Agencies.
23  21. This court's jurisdiction is invoked as is found by reference at 28 USC § 1331 and § 1346.
24  22. This court's jurisdiction for issuing all Writs necessary is found by reference to 28 USC §
25      1651 duly invoked each as more fully appears hereinafter.
26  23. This court's Article III judicial power under United States Constitution jurisdiction is
27      invoked.
28  24. Venue is correct and dully noted under District of Columbia Code § 13-421 and § 13-422.

25. Under this Court's equity jurisdiction and pursuant to U.S.C. § 2201 and Rule 57.

26. The federal-question jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 over
the violations of the United States FDCPA 15 U.S.C. § 1692 *et seq.*

3

**VERIFIED CLAIM**

27. The federal-question jurisdiction of this Court is invoked pursuant to Article VI Clause 2 and treaty laws on Plaintiff's land patent.

28. The jurisdiction of this Court is invoked pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and 28 U.S.C. § 1332.

29. Factual allegations with ample proof, for each and every one of the causes of actions will be presented during the discovery phase of this verified claim or are in Plaintiff's possession and will be presented to this Court.

## JUDICIAL NOTICE

30. To all public servants, including but not limited to Federal, State, or Local corporate government(s): i: a man, :Fareed :Sepehry-Fard., beneficiary., accept your oath of office as your firm and binding contract between you and me, one of the People, whereby you have promised to serve, protect, and defend me, guarantee all of my inalienable rights, and defend the Constitution for the united States of America.

31. The United States Supreme Court, in Haines v Kerner 404 U.S. 519 (1972), said that, all litigants defending themselves must be afforded the opportunity to present their evidence and that the Court should look to the substance of the complaint rather than the form.

32. In Platsky v CIA, 953 F.2d 26 (2nd Cir. 1991), the Circuit Court of Appeals allowed that, the District Court should have explained to the litigant proceeding without a lawyer, the correct form to the plaintiff so that he could have amended his pleadings accordingly. Plaintiff respectfully reserves the right to amend this Claim, if needed.

33. i: a man, :Fareed :Sepehry-Fard., beneficiary., ("Plaintiff") only understand At Law courts and not admiralty, military or equity courts. A man's, :Fareed :Sepehry-Fard's., constitutional inalienable rights are not equity in an equity court, in a military court nor in an admiralty court.

34. Plaintiff is seeking and have always been seeking equity in an At Law court since Plaintiff's constitutional inalienable rights are not equity in a military court, equity in an admiralty court nor they are equity in an equity court.

35. The allegations throughout this verified claim inclusive have evidentiary support under open records and are likely to reach proof of fact qualifying as Mandatory Judicial Notice under Federal Rule of Evidence 201 and controlling of presumptions under Rule 301 of Evidence Rules.

4

VERIFIED CLAIM

36.    Plaintiff is informed and believe, on first personal hand knowledge and thereon allege that Plaintiff's statements in this complaint establish full capacity and standing of Plaintiff to invoke the judicial and executive powers of this court for the protection of my rights, property, and property rights. And, that any objections to said standings and capacities will be noticed to me forthwith so i: a man, :Fareed :Sepehry-Fard., beneficiary., can respond. And, that without such notice and objection, Plaintiff's capacities and standings are fully recognized nunc pro tunc.

37. Thereby, Plaintiff require protection by federal actions enforcing the laws as written while reporting wrongs of both the state and the federal constitutions and laws and rules to this Court as Plaintiff and is now witness in this federal action (18 USC § 1512 et seq).

38. Also see *Yick Wo v. Hopkins*, 118 U.S. 356. A sovereign is the source of law. "*Sovereignty itself is, of course, not subject to law, for it is the author and source of law*", *Yick Wo v. Hopkins*, 118 U.S. 356.

## FACTUAL STATEMENT OF FACTS

39. On or about January 10, 2007, Plaintiff allegedly obtained a loan on the Subject land [12309 Saratoga Creek Dr., city of Saratoga, california republic] in the amount of One Million, Three Hundred Thousand Dollars ($1,300,000.00) (hereinafter referred to as "Note") through GreenPoint Mortgage Funding, Inc. as the alleged lender of the alleged Note. The alleged Note was allegedly secured by a Deed of Trust (hereinafter "DOT"). The Subject land has been and continues to be Plaintiff's primary home.

40. Plaintiff is informed and believes and thereon alleges that the signature on the alleged Note was forged. Plaintiff is informed and believes that, at the time the alleged Note was allegedly executed, Greenpoint Mortgage Funding, Inc. was no longer permitted to do business in California and no longer registered to do business anywhere.

41. At an unknown time, the alleged Note and/or servicing rights of the alleged Note were purportedly transferred to Defendant NATIONSTAR MORTGAGE LLC. ("NARTIONSTAR"). NATIONSTAR purports to be the current alleged servicer of this alleged Note. Plaintiff is informed and believes and thereon alleges that, at some unknown time, the alleged Note was purportedly transferred to U.S. BANK NATIONAL ASSOCIATION, AS PURPORTED TRUSTEE FOR GREENPOINT MORTGAGE FUNDING  TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR2 .  Provided, however, that Plaintiff is informed and believes

5

and thereon alleges that there is no valid, clear chain of title resulting in U.S. BANK NATIONAL ASSOCIATION, AS PURPORTED TRUSTEE  FOR GREENPOINT MORTGAGE FUNDING TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR2  being the true holder of title to the alleged Note and alleged DOT, that, in fact, the original alleged holder of the alleged Note and alleged Deed of Trust, Greenpoint Mortgage Funding, Inc., and the next purported alleged holder, Greenpoint Mortgage Funding Trust, did not have the legal authority to assign the alleged Note and the alleged DOT at the time of the purported transfers; further, that there are other breaks and defects in the chain of title, as a result of which the transfers by the Greenpoint entities and subsequent transfers, including but not limited to the purported transfer to U.S. BANK NATIONAL ASSOCIATION, AS PURPORTED TRUSTEE  FOR GREENPOINT MORTGAGE FUNDING  TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR2, are void, and U.S. BANK NATIONAL ASSOCIATION, AS PURPORTED TRUSTEE  FOR GREENPOINT MORTGAGE FUNDING  TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR2   and its agents, NATIONSTAR, XOME INC., and CLEAR RECON CORP. lacked standing to sell the Subject land at a trustee's sale.

42. Sometime thereafter, Plaintiff began to experience financial hardships, and reluctantly fell behind on his alleged mortgage payments. Plaintiff then discovered discrepancies in the amount owed on the alleged Note, and immediately contacted NATIONSTAR to ask for an accounting. NATIONSTAR representatives, however, failed to provide any accounting of Plaintiff's account. Plaintiff even got his friends and family to come together to help him pay the reinstatement fee to reinstate the alleged loan, but NATIONSTAR still failed to send Plaintiff an accounting of his Note, despite repeated demands that it do so.

43. As NATIONSTAR failed to cooperate with Plaintiff's pleas for foreclosure alternatives, they later advised Plaintiff to apply for a loan modification.

44. In or around 2015, Plaintiff applied for a loan modification. Plaintiff was not assigned a Single Point of Contact (hereinafter "SPOC") to help him with his loss mitigation requests, as required by California Civil Code section 2923.7, until June 2017, shortly before the trustee's sale of the Subject Property.

45. When Plaintiff called to check the status of his alleged loan modification application, NATIONSTAR confirmed that they received the application. However, since Plaintiff was never assigned a SPOC, he never received any determination on the status of his application.

VERIFIED CLAIM

46. Soon thereafter, in or around September 9, 2015, CLEAR RECON, at the request of NATIONSTAR, filed a Notice of Default (hereinafter "NOD") on the Subject land.

47. Attached to the NOD, NATIONSTAR filed a declaration stating that "The mortgage servicer has tried with due diligence to contact the borrower as required by California Civil Code §2923.55(f), but has not made contact despite such due diligence. Thirty (30) days, or more, have passed since these due diligence efforts were satisfied." Such declaration is false and deficient because it was Plaintiff who contacted NATIONSTAR to ask for help, while NATIONSTAR ignored Plaintiff's calls and requests.

48. Plaintiff then made many more phone calls to NATIONSTAR to ask why a NOD was filed while he was in review for an alleged loan modification, and left multiple messages asking for help. Plaintiff's calls were never returned.

49. Plaintiff continued to make phone calls throughout 2015, 2016 and 2017 to ask about the status of his loan modification application, to no avail.

50. Plaintiff continued to offer to pay the reinstatement amount to reinstate his alleged loan, as he was able to get reinstatement funds, but his calls and requests for an accounting were ignored.

51. On or about February 6th, 2017, in Case Number 115cv289500, Santa Clara Superior Court, Plaintiff told judge Maureen Folan, that Plaintiff never ever had any relationship with Defendants. Despite this, Plaintiff explained to judge Folan, that Plaintiff was and is ready and willing to pay any and all alleged reinstatement amounts, if any, and alleged debt amount, if any, to any bona fide entity provided the alleged debt and the alleged reinstatement amounts allegedly due would be authenticated.

52. Plaintiff explained to judge Folan, that to authenticate, according to Black's law dictionary, means to validate and verify under oath.

53. Based on Plaintiff's wishes to settle the matter in amicable terms and without court's interventions, judge Folan, on February 6, 2017, ordered the Defendants to authenticate the amount of the alleged debt, if any, and the alleged reinstatement amount, if any, by February 8th, 2017.

54. Defendants never, to this date, authenticated the amount of the alleged debt, and the alleged reinstatement amount, if any, at anytime.

55. After judge Folan's order, Id., Defendants dismissed both their two title related actions, Case Number 115cv289500 and 115cv286835, Santa Clara Superior Court.

VERIFIED CLAIM

56. Instead, on the due date of the Defendants' required compliance with judge Folan's order, that is on February 8th, 2017, Defendants filed in Santa Clara County Recorder an instrument called notice of trustee sale in direct contempt of court order and in violation of Cal. Penal Code 115(a) and (b).

57. Defendants meanwhile continued to send in several unauthenticated amounts of alleged debt, and alleged reinstatement amounts that varied as much as $700,000 or more from each other depending on the reference point.

58. Unbeknown to Plaintiff, on or about February 8, 2017, Defendant CLEAR RECON improperly filed a Notice of Trustee's Sale (hereinafter "NOS") on the Subject land. Plaintiff was never served with the recorded NOS.

59. In or around March 2017, Plaintiff finally got a response from NATIONSTAR saying that they received his complete loan modification application package, but nothing had been done beyond that. Plaintiff was still not assigned a SPOC to help him with the application process.

60. Soon thereafter, Plaintiff made many more phone calls to NATIONSTAR to check the status of his alleged loan modification application package, to no avail. In fact, Plaintiff left dozens of messages to NATIONSTAR throughout his alleged loan modification review, and spoke with many representatives, who all failed to help him.

61. Furthermore, Plaintiff never spoke to the same individual at NATIONSTAR twice. Each new representative whom Plaintiff spoke with had to research his file from the beginning, as they were not privy to any information provided to the previous representative.

62. On or around May 8, 2017, Plaintiff received a letter from NATIONSTAR stating that they were going to review him for a loan modification. This was confusing to Plaintiff because he was previously told that he was already in review for the loan modification application package he had submitted in 2015. Plaintiff had still not been assigned a SPOC, and no one was able to answer his questions. Further confusing matters, Plaintiff's attorneys received a letter at roughly the same time (dated May 3, 2017) stating that Plaintiff's application for loan mitigation had been rejected, and Plaintiff's attorneys received a letter dated June 6, 2017 finally providing a SPOC. Plaintiff's timely served appeal of the decision regarding loan mitigation was rejected in a letter from NATIONSTAR's attorneys dated June 21, 2017.

63. Defendants scheduled a trustee's sale of the Subject land for July 6, 2017. On July 6, 2017, Plaintiff contacted CLEAR RECON CORP. and was told that the trustee's sale had been postponed

from July 6, 2017 to July 20, 2017. Plaintiff is informed and believes and thereon alleges that 45 minutes after the time on July 6, 2017 that the sale was originally scheduled to be conducted (and after all potential third-party purchasers had left), NATIONSTAR instructed CLEAR RECON CORP. to proceed with the sale, and it did so, notwithstanding Plaintiff's protests that CLEAR RECON CORP. had provided notice to the general public and Plaintiff that the sale had been postponed to July 20, 2017. A Trustee's Deed Upon Sale was recorded on July 20, 2017.

64. Plaintiff and another witness by the name of Nasser Wahab Hamidy on July 6th, 2017 recorded the telephone conversations with Clear Recon Corp staff a person by the name of Salwa Eshoo as well as audio and video recorded the auctioneer by the name of Steve Neal confirming the postponement of the foreclosure trustee sale from the original date of July 6th, 2017 to July 20th, 2017 for unknown reasons.

65. Plaintiff thoroughly research the Santa Clara County as well as California Secretary of State within a week from the [fake] foreclosure sale to determine whether or not the Auctioneer and the auction company were bonded, Plaintiff found out that neither of them were bonded.

66. Pursuant to CA Civ Code § 1812.600 , *"(a) **Every auctioneer and auction company shall maintain a bond issued by a surety company admitted to do business in this state**. The principal sum of the bond shall be twenty thousand dollars ($20,000). A copy of the bond shall be filed with the Secretary of State. (b) The bond required by this section shall be in favor of, and payable to, the people of the State of California and shall be for the benefit of any person or persons damaged **by any fraud, dishonesty, misstatement, misrepresentation, deceit, unlawful acts or omissions**, or failure to provide the services of the auctioneer or auction company in performance of the auction by the auctioneer or auction company or its agents, representatives, or employees while acting within the scope of their employment. (c) (1) **No auctioneer or auction company shall conduct any business without having a current surety bond in the amount prescribed by this section and without filing a copy of the bond with the Secretary of State**.....* " Emphasis added, CA Civ Code § 1812.600.

67. Plaintiff alleges, the order signed by Miss Overton of Santa Clara Superior Court in Case Number 17cv314286 (the unlawful detainer action) for service of process for the "SUMMONS" and the complaint, states very clearly that the service of process **shall be** deemed complete if and only if all the following conditions would have been satisfied, otherwise, the **service of process shall not be deemed complete** because it would be in contravention of Miss Overton's "Order"

which was prepared by the attorneys for the Defendants and signed by Miss Overton, see below Miss Overton's order re service of process:

**IT IS HEREBY ORDERED THAT:**

Service of the unlawful detainer complaint, the summons, the prejudgment claim for possession, and the civil cover sheet may be effected on all parties claiming a right to possession of the real property located at 12309 Saratoga Creek Drive, Saratoga, California 95070 (the "Property") by posting a copy of the summons and the prejudgment claim of possession on the gate to the Property and by mailing a copy of the summons, the complaint, the prejudgment claim for possession, and the civil cover sheet to defendant Fareed Sepehry-Fard at the Property by certified mail. Service of these documents shall be deemed complete on the 10th day after the documents are posted and mailed as set forth in this order.

DATED: September 5, 2017



Hon. Carol Overton

68. Plaintiff alleges, here there **is no gate to the property,** this fact can easily be verified by taking a look at my land, there is one gate ~ 40ft inside my land ("property"), here it is, see below, that is to say, from the curb at Saratoga Creek to the gate at my land, there is approximately 40 ft distance. See Overton's "order", *Id*.

69. Plaintiff alleges, despite the fact that the service of process was and is deficient, Defendants continued and still continue to harass, intimidate, demonize and even threaten Plaintiff and Plaintiff's family.

10

VERIFIED CLAIM



70. Plaintiff alleges the process server Kellie Emmons, by her own admission, is not even a registered process server see below cut and pasted from her own Declaration, even though California process servers who serve more than 10 papers a year must be registered in the County they live in or in their primary place of business.

71. Plaintiff alleges, under California law, any natural person who makes more than 10 services of process within this state during one calendar year, for specific compensation or in expectation of specific compensation, where that compensation is directly attributable to the service of process, shall file and maintain a verified certificate of registration as a process server with the county clerk of the county in which he or she resides or has his or her principal place of business. Any corporation or partnership that derives or expects to derive compensation from service of process within this state shall also file and maintain a verified certificate of registration as a process server with the county clerk of the county in which the corporation or partnership has its principal place of business.

72. Plaintiff alleges that Kellie Emmons claimed that she mailed Plaintiff whatever she claims she mailed Plaintiff and declared under penalty of perjury under the laws of State of California, therefore, Emmons committed perjury for at least three independent reasons: 1) the order of Miss Overton clearly states that the notice must have been with registered and certified mail and had they not done that-additional service by registered and certified mail, and they did not do that, **then the service of process shall not be deemed complete,** "order" of Miss Overton, *Id.,*

11

VERIFIED CLAIM

73. Additionally, Emmons by her own admission on the records, is not even a registered process server, even though Emmons claims to have been a process server for 22 years; California Business & Professions ("B&P") Code sections 22350 – 22360 govern registration of process servers.

74. According to California law, anyone who performs **more than 10 services of process in a year must register, pay fees, and file a $2000 bond. Failure to register is a misdemeanor**.

75. Kellie Emmons' so called Proof of Service not only is not compliant with Miss Overton's "order", since it was not sent by certified mail and allegedly by regular mail [that Plaintiff: never received] but also it is deficient, since Kellie Emmons, by Kellie Emmons' own admission, is not a registered Process Server in violation of enacted California law at California Business & Professions ("B&P") Code sections 22350 – 22360, *Id., see below cut and pasted from Emmons own "Declaration"* that Emmons was not a registered process server, see page 11 of Emmons' Declaration:

### e. I am: Not a Registered California Process Server

"                                           " Declaration of Kellie Emmons, one of Defendants' culprits for attempted grand theft and piracy.

4. I am readily familiar with the business practice for collection and processing of correspondence as deposited with the U.S. Postal Service on Fri., Jul. 28, 2017 in the ordinary course of business.

5. *Person Serving:*                                          Recoverable Cost Per CCP 1033.5(a)(4)(D)
   a. KELLIE EMMONS                          d. *The Fee for Service was:*
   b. FIRST LEGAL SUPPORT SERVICES          e. I am: Not a Registered California Process Server
      1138 HOWARD ST.
      SAN FRANCISCO, CA 94103
   c. 415-626-3111

76. Moreover, Plaintiff alleges, that the purported "PROOF OF SERVICE By Mail" in court records, allegedly signed by Kellie Emmons names the alleged Plaintiff as U.S. BANK NATIONAL ASSOCIATION and not the alleged Plaintiff in Case Number 17cv314286-Superior Court of California, County of Santa Clara, the unlawful detainer action, see page 11 of Emmons' Declaration:"

*Plaintiff:* U.S. BANK NATIONAL ASSOCIATION      "

12

77. Plaintiff offered to pay the alleged debt to the so called foreclosure trustee, Plaintiff's offer was received and signed for by Defendants and notice of their default by their failure to comply with California Commercial Code was filed in California Secretary of state and they were notified. And subsequently, the alleged debt, even if it existed, and it never did, was discharged.

78. That is to say, on or about February 9th, 2017, Plaintiff by registered and certified USPS mail send to Defendants Plaintiff's promissory note to pay the full amount of the alleged debt by February 24th, 2017 if the alleged debt amount would be verified under oath within 72 hours of the receipt of Plaintiff's tender which was received and signed for by Defendants.

79. Plaintiff reminded Defendants, "

**i: am making this tender of payment of an alleged obligation to pay for an alleged debt which is made to a person entitled to enforce the instrument subject to the verification of the amount of the alleged debt under oath.**

**"Fiduciary" means an agent, trustee, partner, corporate officer or director, or other representative owing a fiduciary duty with respect to an instrument.**

**Fiduciaries have a legal obligation and a fiduciary duty to present my tender as the alleged PAYOR to the alleged PAYEE for settlement and closure of the alleged debt in full, per attached.**

"

80. Defendants breached their fiduciary duties by failing to neither accept, nor reject and return Plaintiff's promissory note.

81. On or about February 27, 2017, Plaintiff sent to Defendants by registered and certified mail, Defendants Notice of Breach of Fiduciary duty duties and PROOF OF DISCHARGE of the alleged debt by failing to neither accept, nor reject and return Plaintiff's promissory note which was received and signed for on date March 3rd, 2017,

82. Plaintiff alleges that Defendants' breach of fiduciary duties is further supported by judge Folan's order dated February 6th, 2017 in Case 115cv289500, that Defendants must have authenticated the amount of the alleged debt, if any, and the alleged reinstatement amount, if any, by February 8th, 2017. But Defendants did not, and instead, on the due date of their required compliance

13

VERIFIED CLAIM

with Judge Folan's order (dated: February 8th, 2017),  Defendants filed in Santa Clara County Recorder's office a notice of Trustee Sale.

83. Later on, Defendants dismissed both their title related actions in Superior Court of California, County of Santa Clara, Case Numbers 115cv289500 and 115cv286835 following judge Folan's order.

84.    Plaintiff by USPS registered certified USPS mail send Defendants' Notice of Default and  PROOF OF DISCHARGE on February 27th, 2017 pursuant to California Commercial Code Section 3603 which is the same as UCC §3-603 and subsequent Notice of Breach of fiduciary duty of the foreclosure trustee and its Co Parties agent(s) Principle(s) pursuant to California Commercial Code Section 3307 which is the same as UCC Section 3-307 that were received and signed for on March 3rd, 2017 and March 7th, 2017.

85.    Plaintiff served Defendants with over a dozen writs, none were returned by any of the Defendants.

86.    Defendants must appear and show cause why Defendants are not in contempt of the writs for not returning the writs, and why Plaintiff is not entitled to several tort claims to purge Defendants' contempt of the writs for failure to return the writs.

87.    Some of the writs or subpoenas that Defendants and their culprits were served with USPS certified, registered and restricted USPS mail but did not return and committed tort and or aided and abetted tort are:

XOME INC. and Amar R. Patel to:1) furnish all correspondence related to postponement of trustee sale date from July 6, 2017 to July 20, 2017 for T.S. No. 008259-CA, property: 12309 Saratoga Creek Dr. Saratoga California [95070], APN 386-19-068; And 2) name/coordinates of the auctioneer who sold the property within thirty (30) days from the receipt of this Subpoena or by 5 pm, 12/28/2018, whichever happens first

Mailed on November 18th, 2018, which was received and signed for.

Custodian of Records at Clear Recon to:1)furnish all correspondence related to postponement of trustee sale date from July 6,2017 to July 20,2017 for T.S. No. 008259-CA,property:12309 Saratoga Creek Dr.Saratoga California[95070],APN 386-19-068;And 2)name/coordinates of the auctioneer who sold the property within thirty (10) days from the receipt of this Subpoena or by 5 pm,3/20/2018, whichever happens first

Mailed on March 7th, 2019, which was received and signed for on March 9th. 2019 and on March 11th, 2019.

VERIFIED CLAIM

Custodian of Records for U.S. Bank National Association,as Trustee for Greenpoint Mortgage Trust Mortgage Pass-Through Certificates, Series 2007-AR2 ("Trust") to furnish the following :1)Proof of funds in Trust's Bank Account;2) Bank Account Information;3) Article of incorporation of Trust; 4) proof of payment for the alleged assets by the Trust within 30 days from receipt of this Subpoena or by 12/28/2018

☐ Continued on Attachment 2.

*WHICHEVER HAPPENS FIRST*

Mailed on November 12ᵗʰ, 2018, which was received and signed for.

William A. Aspinwall to furnish the names and addresses of all alleged certificate holders of the alleged trust: GREENPOINT MORTGAGE TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR2 within 30 days from the receipt of this Subpoena or by 12/28/2018 at 5 pm, whichever happens first.

Mailed on November 12ᵗʰ, 2018, which was received and signed for.

Nationstar Mortgage LLC ("Nationstar") to furnish its proof, amount and source of payment Nationstar received indicated in instrument number 23560538 labeled as CORPORATE ASSIGNMENT OF DEED OF TRUST, per attached, such as wire transfer, wire transfer information, canceled check, check 21 and ACH confirmation within 30 days from the receipt of Subpoena or by 5 p.m. on March 14, 2017.

Mailed on January 30ᵗʰ, 2017, which was received and signed for.

William A. Aspinwall to furnish his particulars to wit: Aspinwall's Power of Attorney ("POA"), Oath of Office, License, Bond, Liability Insurance, Re Insurance and Errors and Omissions Insurance within 30 days from receipt of this Subpoena or by 12/28/2018, 5 p.m. whichever happens first. Aspinwall must also furnish Aspinwall's alleged client(s)' particulars, Id and whoever else that wants to do business with me

Mailed on November 18th, 2018, which was received and signed for on November 19ᵗʰ, 2018.

Mr. Sunil Kulkarni to furnish within thirty (30) days from receipt of this writ or by 5 pm on January 22nd, 2021, a signed affidavit under penalty of perjury under the laws of the state of California as to the relationship of Amar R. Patel who is CFO of Nationstar and CEO of XOME, Inc. and his wife Sujata Patel which is subject to discovery.

15

VERIFIED CLAIM

Mailed on September 10th, 2020, which was received and signed for.

Dr. Sujata Patel to furnish any and all work performed or to be performed and the sources of their funding for: electronic torture and murder, mind control, non-consensual human experimentation, neuroweapons testing, and psychological warfare operations, Remote Neural Monitoring within thirty (30) days from the receipt of this Subpoena or by 5 p.m. on November 2nd, 2020 whichever happens first.

Mailed on September 10th, 2020, which was received and signed for.

Mr. Sunil Kulkarni to furnish within thirty (30) days from receipt of this writ or by 5 pm on December 10th, 2020, proof of monthly mortgage payments and the sources of monies used to make these monthly mortgage payments, if any, for property located at 615 College Avenue, Palo Alto, CA 94306 and any other properties owned by Mr. Kulkarni and or his wife Dr. Sujata Patel and or his, her and or their trust.

Mailed on September 10th, 2020, which was received and signed for.


FIRST CAUSE OF ACTION
(VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT)
(Against ALL DEFENDANTS and DOES 1 -100)


88.     Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

89.     Defendant NATIONSTAR failed to notify Plaintiff of the transfer of the servicing of Plaintiff's alleged loan in violation of Sections 12 U.S.C. § 2605(a), (b) and (c).

90.     Defendants failed to send Plaintiff annual escrow statements in violation of Section 12 U.S.C. § 2605(g).

91.     Defendant Nationstar violated Section 12 U.S.C. § 2605(k) by:

a. Obtaining improper forced-placed insurance with respect to Plaintiff's alleged loan.

b. Failing to timely provide contact information for alleged owner and/or alleged servicer of Plaintiff's alleged loan.

c. Failing to correctly and truthfully respond to the inquiries by the Consumer Financial Protection Bureau.

16

92.     The regulations under RESPA require mortgage loan servicers and lenders to satisfy certain conditions precedent to foreclosure. Section 12 C.F.R. 1024.39(a) requires the servicer to attempt to make live contact with an alleged borrower prior to referring a loan for foreclosure. Section 12 C.F.R. 1024.39(b) requires the servicer to send a Post Foreclosure Referral Notice to an alleged borrower prior to referring a loan to foreclosure. The Post Foreclosure Referral Notice is a letter that notifies borrowers of loss mitigation programs that will help them avoid foreclosure and instructs them how to apply for same. Section 12 C.F.R. 1024.41(g) prohibits "dual tracking". Dual Tracking is simultaneously advancing foreclosure while a borrower is in review for loan modification or loss mitigation. In the instant case, Defendants failed to attempt to make live contact with Plaintiff prior to the foreclosure referral or provide Plaintiff with the Post Foreclosure Referral Notice.  Section 12 C.F.R.1026.36 requires a servicer to provide information about the alleged loan in response to a written request from an alleged  borrower.

93.     Defendants failed to comply with the regulations issued under RESPA cited above and instead went forward with the trustee's sale of the Subject land anyway.

94.     As a direct and proximate result of the violations of RESPA and regulations promulgated under it, set forth above, by Defendants and their representatives, Plaintiff has suffered, and continues to suffer, general and special damages in an amount to be determined at trial.

SECOND CAUSE OF ACTION
(Violation of Article VI Clause 2 – Land Patent and Treaty Laws)

(Against NATIONSTAR, U.S. BANK NATIONAL ASSOCIATION, AS PURPORTED TRUSTEE  FOR GREENPOINT MORTGAGE FUNDING  TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR2, CLEAR RECON CORP., XOME INC. and DOES 1-100)

95.     Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

96.     All oath takers including but not limited to all judges of all courts have sworn an oath to the constitution of this republic which means all judges are obligated to heed to Article VI Clause 2 of the constitution of this republic and treaty laws on land patents.

17

97.     Plaintiff states that Article VI Clause 2 obligates all judges that: *"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."*, Article VI Clause 2.

98.     Plaintiff furthermore states that the Supremacy Clause which appears in Article VI of the United States Constitution, establishes the Constitution, Federal Statutes, and U.S. treaties as "the supreme law of the land." The Constitution is the highest form of law in the American legal system. *State judges are required to uphold it, even if state laws or Constitutions conflict with it.*

99.     Plaintiff states that Plaintiff as the Lawful 'assign' to a portion of the established Sovereign Land Patent, pursuant to the land patents issued for the Land claims confirmed after the Treaty of Guadalupe Hidalgo, pursuant to the Act of 1851, as with all true land patents of the United States says: "to all heirs and assigns forever". Any objection to Confirmation & Validation of any original Spanish Crown or Mexican Land Patent was given a 2/yr period to dispute after confirmation. That 2/yr objection period expired in '1888'! Plaintiff owns his Land in 'FEE SIMPLE', and is NOT merely a 'TENANT IN FEUD'.

100.    Plaintiff furthermore states, "

Safford v. Stubbs 117 ILL. 389 (1886) "Sheriffs deeds also are colors of title"

Dempsey v. Burns, 281 Ill. 644, 65 (1917) "A warranty deed or deed of conveyance is a color of title."

Joplin Brewing Co. v. Payne, 197 Mo. 422, 94 s. W. 896 (1906) court said, "In fact, any instrument may constitute color of title when it purports to convey the title to the land, as well as the land itself; although it is void as a muniment of title."

18

"Muniment" means document serving as evidence of inheritances, title to property, etc. Webster's Dictionary, 2nd Ed. 1972.

Summa Corp. v. California, 466 US 198 (1984). The land is secured by patent under the Guadeloupe Hildalgo Treaty. The treaty falls under the supremacy clause of the Constitution, which proclaim that Treaties are the supreme law even over a State's foundational Constitution.

The Supremacy Clause Article VI, section 2 of the U. S. Constitution which reads; "This Constitution, and the Laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, any Thing in the Constitution or laws of any state to the contrary notwithstanding."

101.   Plaintiff furthermore states that the party holding the land patent is entitled to possession and that is the Plaintiff in this instant matter. Defendants can not prove title and Plaintiff did not sign away any rights to his land patent. Plaintiff, a natural individual sovereign man of California republic in these united States of America, holds title by nature.

102.   Plaintiff also states that land patent drive from treaty law and the Constitution of this republic. The will and intent of congress regarding land patents have never been repealed. Land patents are protected by the Supremacy Clause Article VI, section 2, of the U.S. Constitution and Article I, Section 10 of the U.S. Constitution "no sate shall impair the obligation of contract". The supremacy Clause Article VI, section 2 of the U.S. Constitution: " This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.", Article. VI. of the Constitution of this republic.   *Hughes V. Miller's Mutual Fire Insurance* Co., 246 s.w. 23 (1923) "it is the largest estate in land that the law will recognize, **a fee simple estate still exists even though the property is mortgaged or encumbered**", emphasis added.

103.   There is no law making a land patent a lawful nullity.

19

104.    The grant was given by the U. S. government and is the intent of our founding fathers.

105.    This is not the Plaintiff's fault that the founding fathers didn't like being subjected to a king's will and emotion which led them to create such a document. The people of these united States are the beneficiary of their sacrifice.

106.    Our founders risked their lives, their families' lives and their fortunes to establish an idea, a concept, a dream of freedom and liberty. They desired to pass it on to generation after generation forever. They said so in the land patent---"forever"---.

107.    The land patent appears to be designed to be a destructive force against the forces of the banks (i.e. the pretender lenders) and government.  Jefferson said banks are dangerous. In a May 28th, 1816 letter to John Taylor, Thomas Jefferson's wrote in the closing sentence; *"And I sincerely believe, with you, that banking establishments are more dangerous than standing armies."* Armies are a pretty destructive force.\

108.    A brief look at back the last ten to fifteen years: the Massachusetts Supreme Court has overturned nearly five years' worth of foreclosures that displaced the people and families of that state. Armies displace people and families. In Nevada almost an entire development was foreclosed and most of the homes destroyed. Millions more across the country have been foreclosed and eventually destroyed.  Armies also destroy buildings. In Florida people were lined up for blocks trying to save their homes from foreclosure. Pretender lenders as the Defendants using deceptive, fake documents to create misdirection. Armies use misdirection in war strategy. The Defendants as the pretender lender banks have created millions of properties with clouded titles. Armies don't do that. The Defendants as  pretender lender banks have been the most destructive force in the world of property law, not the founders' land patent document and the first conveyance of title to the land to the people in these united States of America.

> Moore v. Robbins, Ill. 96 U.S. 530, 24 L.Ed. 848. The issuance of a patent divested the government of all authority and control over the land;

> Raestle v. Whitson, 582p. 2d 17-0, 172 (1978). Land Patent is the highest evidence of title and is immune from collateral attack.

[Hooper et.al.v.Scheimer, 64 US. (23 how.) 235 (1859)]. "I affirm that a patent is unimpeachable at law, except, perhaps, when it appears on its own face to be void; and the authorities on this point are so uniform and unbroken in the courts, federal and state, that little else will be necessary beyond a reference to them."

[Walton v. United States, 415 f2d 121,123 (10th cir. (1969)] "a patent, once issued, is the highest evidence of title, and is final determination of the existence of all facts,"

Fenn v Holme, 21 Howard 481 (1858). "The plaintiff in ejectment must in all cases prove the legal title to the premises in himself, at the time of the demise laid in the declaration, and evidence of an equitable title will not be sufficient for a

recovery. The practice of allowing ejectments to be maintained in state courts upon equitable titles cannot affect the jurisdiction of the courts of the United States."

Langdon v Sherwood, 124 U.S. 74 (1888): Carter v Ruddy, 166 US 493 (1897). "In federal courts, the rule that ejectment cannot be maintained on a mere equitable title is strictly enforced, so that ejectment cannot be maintained on a mere entry made with a register and receiver, but only on the patent, since the certificates of the officers of the land department vest in the locator only equitable title. This rule prevails in the federal courts even when the statute of the state in which the suit is brought provides that a receipt from the local land office is sufficient proof of title to support the action."

Miranda v. Arizona, 384 U.S. 436, (1966). "Where rights secured by the Constitution are involved, there can be no rule making or legislation, which would abrogate them."

United States v. Bishop, 412 U.S. 346 (1973). "If you've relied on prior decisions of the Supreme Court you have a perfect defense for willfulness."

109.    Relief demanded is the end to the Defendants' fraudulent foreclosure action and or their so called "unlawful detainer" action.

21

VERIFIED CLAIM

110.    Should one of the sovereign people of the united States of America stand on the Constitution, treaty law, Supreme Court rulings, the intend of congress, and other lawful writings of which one is the beneficiary and defend their property? which one has the right, against those who have taken an oath to the Constitution of this republic? Which party will be the perpetrator? Would it not be Treason to violate sovereign people's rights secured by the Treaty and the Constitution?

111.    The definition of Treason according to Merriam-Webster, the offense of attempting by overt acts to overthrow the government of the state to which the offender owes allegiance or to kill or personally injure the sovereign of the sovereign's family, both of which happened in state court misconduct, to wit: actors admitted to treason despite their oath of office at Article VI Clause 2 and they conspired with Severson attorneys to literally kill Plaintiff by needless legal stressors despite numerous multiple physicians' orders to Plaintiff not to participate in any and all legal proceedings or face possible death, the misconduct of Defendants and state actors nearly killed Plaintiff, multiple times, Plaintiff had to be rushed to emergency hospital, multiple times, Id. All because several state actors - Rudy, Kulkarni, Pennypacker, Hayashi and Geffon repeatedly failed to adhere to their claimed oath of office, and therefore admitted to treason multiple times, it is time to end these and many more criminal conduct committed and perfected at Article VI Clause 2-Land Patents.

112.    The Acts of Congress that operate to issue a land patent are controlling. The certificate in Wilcox v. Jackson did not say: "to all heirs and assigns forever" because it was not a land patent. The land patents issued for the Land claims confirmed after the Treaty of Guadalupe Hidalgo, pursuant to the Act of 1851, as with all true land patents of the United States says: "to all heirs and assigns forever".

113.    Accordingly, the relief demanded must be granted as a matter of law, *Id.*   To be clear, Plaintiff is not wishing for equity in a court of equity, in an admiralty court, nor in a military court, instead Plaintiff is wishing for equity in an at law court, California Article VI Section I (Court of Record).

114.    The people have an unalienable right to practice law, any officer of the court that moves to prevent Plaintiff's unalienable right to do so, wars against both the State and united States Constitution, and commits violence against the People.  De facto  licenses are for de-facto civil law courts, not courts of Law nor courts of equity. The "unalienable right" of the people to

22

practice law in Common Law Courts of Record cannot be abrogated. Whereas de-facto civil law courts may require a de-facto "license" (which is just a dues card) from the traitorous American BAR Association, courts of Justice do not and cannot require a license!

115.    As We the People ordained in said Article III Sections 1&2 the United States Supreme Court and the Federal Judiciary's Judicial powers extended to law and equity, we did not give Congress nor the Judiciary power to legislate or enforce civil and criminal statues which are disguised as law and were written by tyrants to conceal the Common Law and oppress the people.

116.    Defendants and their culprits have been deluded into believing People are their subjects.

117.    As a direct and proximate result of the violations of Article VI Clause 2 as to the Federal Supremacy Clause and treaty laws on land patents, set forth above, by Defendants and their representatives, Plaintiff has suffered, and continues to suffer, general and special damages in an amount to be determined at trial.

THIRD CAUSE OF ACTION
[Violation of Sherman Anti Trust Act of 1890 (26 Stat. 209, 15 U.S.C. §§ 1–7)]
(Against NATIONSTAR, U.S. BANK NATIONAL ASSOCIATION, AS PURPORTED
TRUSTEE  FOR GREENPOINT MORTGAGE FUNDING  TRUST MORTGAGE PASS-
THROUGH CERTIFICATES, SERIES 2007-AR2, CLEAR RECON CORP., XOME INC. and
DOES 1-100)

118.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

119.    The Sherman Act broadly prohibits 1) anticompetitive agreements and 2) unilateral conduct that monopolizes or attempts to monopolize the relevant market. The Act authorizes private parties injured by conduct violating the Act to bring suits for treble damages (i.e. three times as much money in damages as the violation cost them). The purpose of the Sherman Act is not to protect competitors from harm from legitimately successful businesses, nor to prevent businesses from gaining honest profits from consumers, but rather to preserve a competitive marketplace to protect consumers from abuses.

23

120.    The penalties for violation of Sherman Anti Trust Act is $100,000,000 per company and $1,000,000 per individual. The companies involved in violation of Sherman Anti Trust Act are: Clear Recon Corp., Nationstar Mortgage LLC., Xome Inc. (fully owned by Nationstar), U.S. BANK NATIONAL ASSOCIATION, AS PURPORTED TRUSTEE FOR GREENPOINT MORTGAGE FUNDING TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR2, the auctioneer company and Does 1-100. The individuals involved in violation of Sherman Anti Trust Act are attorneys from Severson and Werson (About 1 dozen attorneys including Mary Kate Sullivan, Adam N. Barasch, Joseph W. Guzzetta, Jan T. Chilton, William Aspinwall, Bernard J. Kornberg, Michael Cross, Andrew Noble, and others).

121.    Defendants appraised Plaintiff's home value at $2.38M about 7 months prior to the Defendant's fake auctioning off Plaintiff's home through a credit bid of about $1.45M which was less than half the value of Plaintiff's home value and about $1,000,000 less than the value that Defendants themselves appraised Plaintiff's home value.

122.    Defendant's appraisal report of Plaintiff's private land, filed in Case Number 17-50499, US Bankruptcy Court, San Jose Division as Docket Number 30-1, filed date 3/31/2017, shows the Defendants appraised Plaintiff's private land at $2,380,000. Although, this appraisal is grossly in error where Plaintiff's unique private land was compared with significantly less desirable properties that not only are not backed to Saratoga Creek [which at the minimum increases the appraised value by about $600,000] but also, the going rate per sq ft of Plaintiff's private land was, at that time, in excess of $1100 making Plaintiff's private land value at about $3,000,000 based on 2720 square foot of living area.

123.    Plaintiff alleges that even based on Defendants' erroneous and well below market value of Plaintiff's private land together with false and inconsistent amount of the alleged debt allegedly due to Defendants furnished to Plaintiff by the Defendants, there are significant amount of Plaintiff's monies and land that Defendants have stolen from Plaintiff and have refused repeatedly to return those stolen monies back to Plaintiff.

124.    Plaintiff alleges that Defendants violated Sherman Anti Trust Act by giving false and misleading notice of postponement of the [fake] auction sale date from the original date of July 6th, 2017 to July 20th, 2017 for unknown reasons, but conducted the [fake] auction sale anyways, despite false and misleading multiple notices of postponement of the [fake] foreclosure sale to Plaintiff and to the public. Moreover, Defendants did this misconduct through a credit bid by a

non existing entity at about $1,000,000 less than the Defendants' own appraisal of Plaintiff's home value.

125.    As a direct and proximate result of Defendants' violations Sherman Anti Trust Act, set forth above,  Plaintiff has suffered, and continues to suffer, general and special damages in an amount to be determined at trial.

FOURTH CAUSE OF ACTION
(Violation of Bid Rigging)
(Against NATIONSTAR, U.S. BANK NATIONAL ASSOCIATION, AS PURPORTED TRUSTEE  FOR GREENPOINT MORTGAGE FUNDING  TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR2, CLEAR RECON CORP., XOME INC. and DOES 1-100)

126.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

127.    Bid rigging is a fraudulent scheme in a procurement action which enables companies to submit non-competitive bids. It can be performed by corrupt officials, by firms in an orchestrated act of collusion, or by officials and firms acting together. This form of collusion is illegal in most countries. It is a form of price fixing and market allocation, often practiced where contracts are determined by a call for bids, for example in the case of government construction contracts. The typical objective of bid rigging is to enable the "winning" party to obtain contracts at uncompetitive prices (i.e., at higher prices if they are sellers, or lower prices if they are buyers). The other parties are compensated in various ways, for example, by cash payments, or by being designated to be the "winning" bidder on other contracts, or by an arrangement where some parts of the successful bidder's contract will be subcontracted to them. In this way, they "share the spoils" among themselves. Bid rigging almost always results in economic harm to the agency which is seeking the bids, and to the public, who ultimately bear the costs as taxpayers or consumers, source Bid rigging - Wikipedia.

128.    Plaintiff alleges that  Defendant Xome on or about 12/12/2016 in Case Number 17-50499, US Bankruptcy Court, San Jose Division, appraised Plaintiff's home value at $2,380,000.

129.    Plaintiff alleges on or about July 6th, 2017 during the auction sale of Plaintiff's home, which took place at the back of Superior Court 191 North First Street, San Jose, california, the

25

auctioneer at or about 9 am and then again at or about 11 am announced that the foreclosure trustee sale of Petitioner's land was postponed to July 20th, 2017 for unknown reasons.

130.    Plaintiff alleges after all interested parties of Plaintiff's land left the auction site due to auctioneer's, Defendants Clear Recon Corp's and Nationstar's announcement of postponement of the auction sale due to unknown reasons, at or about 11:43 am on July 6th, 2017, the auctioneer all of a sudden, without any notice and despite Petitioner's repeated objections started to [fake] selling Petitioner's land.

131.    Plaintiff has the audio and video tapes of these auctioneer's misconduct and auctioneer's announcement of the postponement of the sale date from July 6th, 2017 to July 20th, 2017, recorded on July 6th, 2017.

132.    Plaintiff also audio taped his conversations with the foreclosure trustee and Defendant Clear Recon Corp of the postponement announcement of the auction sale date of Plaintiff's land from July 6th, 2017 to July 20th, 2017, recorded on July 6th, 2017.

133.    There were two witnesses who witnessed Defendant's Clear Recon Corp's announcement of postponement sale date and auctioneer announcement of the postponement of sale date from July 6th, 2017 to July 20th, 2017 for unknown reasons.  These two are Plaintiff and Nasser Wahab Hamidy who signed two notarized affidavits of the facts stated in this claim concerning the auction sale, and served all Defendants by USPS registered, certified mail restricted delivery.

134.    Plaintiff alleges Defendant Xome (a fully owned subsidiary of Nationstar) appraisal value of Plaintiff's home is in error where Plaintiff's unique private land was compared with significantly less desirable properties that not only are not backed to Saratoga Creek [which at the minimum increases the appraised value by about $600,000] but also, the going rate per sq ft of Plaintiff's private land was and still is in excess of $1100 making Cross Complainant's private land's value, in 2017, in excess of $3,000,000 based on 2720 square foot of living area.

135.    Plaintiff alleges that even based on Defendants' erroneous and well below market value of Plaintiff's private land together with false and inconsistent amount of the alleged debt allegedly due to Defendants furnished to Plaintiff, there are significant amount of Plaintiff's monies that have been stolen by Defendants and must be returned to Plaintiff plus fees, interest and other compensation at once, even setting aside all other Defendants' misconduct.

VERIFIED CLAIM

136.    Despite Defendants' Xome and Nationstar's appraisal of Plaintiff's home value at $2,380,000, Defendants caused to transfer the deed to a non existing entity through a credit bid of about $1.45 Million or about $1,000,000 less than the Defendants' own appraisal of Plaintiff's home value.

137.    Accordingly, Defendants Xome and Nationstar aided and abetted by other Defendants perfected and committed bid rigging, severely damaging Plaintiff economically , physically and emotionally.

138.    Defendants Nationstar, Xome, Clear Recon Corp committed and perfected bid rigging, which is their collective fraudulent scheme in the [fake] auction sale of Plaintiff's sovereign land, enabled non existing Defendant , U.S. BANK NATIONAL ASSOCIATION, AS PURPORTED TRUSTEE  FOR GREENPOINT MORTGAGE FUNDING  TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR2 aided and abetted by the rest of the Defendants to submit a non-competitive bid (a credit bid by a non existing entity, Id.), at about $1,000,000 less than the appraised value of Plaintiff's land by the Defendants' own appraisal, through orchestrated acts acting together and committed price fixing and  bid suppression, and by false and misleading multiple notices of postponement of the fake auction sale from the original date of July 6th, 2017 to July 20th, 2017 for unknown reasons but went ahead anyways and conducted the [fake] foreclosure auction sale of Plaintiff's land on July 6th, 2017.

139.    As a direct and proximate result of Defendants' violation of Bid Rigging, set forth above,  Plaintiff has suffered, and continues to suffer, general and special damages in an amount to be determined at trial.

FIFTH CAUSE OF ACTION
(Violation of Fair Debt Collection Practices Act ("FDCPA")
Against All Defendants & DOES 1-100

140.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

141.    The actions of Defendants have been  malicious and wanton with the specific aim of stressing Plaintiff to the point that Plaintiff would die, without any of the Defendants having any standing of any kind.

27

142.    In awarding Plaintiff's FDCPA claims against the Defendants, and in determining the amount of liability in this action under inter alia, subsection (a) of this section, the court shall consider, among other relevant factors --(1) in any individual action under subsection (a)(2)(A) of this section, **the frequency and persistence of noncompliance by the debt collector**, the nature of such noncompliance, and the extent to which such noncompliance was intentional, FDCPA - 15 USC 1692k § 813.  Civil liability.

143.    As previously mentioned, Plaintiff alleges, that the Defendants countless times and through persistent noncompliance with various statues as set forth above, severely damaged Plaintiff economically, physically and emotionally.

144.    Plaintiff as a direct and proximate results of Defendants' violation of FDCPA, as set forth above, suffered and continue to suffer economic, physical and emotional damages, in an amount to be determined by jury of Plaintiff's peers at 7th Amendment.

SIXTH CAUSE OF ACTION
(Violation of Clayton Antitrust Act)
Against All Defendants & DOES 1-100

145.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

146.    Plaintiff alleges that Defendants unlawful actions are actionable at Clayton Anti Trust Act, Because Plaintiff was harmed economically, physically and emotionally when Defendants conducted exclusive dealings by inter alia false and or otherwise fraudulent multiple notices of postponement of the fake auction sale of Plaintiff's land from the original date of July 6th, 2017 to July 20th, 2017 for unknown reasons, but went ahead and conducted the [fake] foreclosure sale anyways, which  are challenged under Clayton (or Sherman), and  they are treated under the rule of reason.

147.    Plaintiff alleges under the 'rule of reason', the conduct is only illegal, and the plaintiff can only prevail, upon proving to the court that the defendants are doing substantial economic harm, to wit: appraisal of Plaintiff's land at $2,380,000 but then Defendants, through a credit bid, by a non existing entity, faked to transfer Plaintiff's home trust deed at about half its value, to wit

28

at about $1.45M, or about $1,000,000 less than the value that the Defendants themselves appraised Plaintiff's home value.

148.    Moreover, Defendants abused Plaintiff's health conditions, during court stay orders, Id., due to Plaintiff's medical conditions and kept filing instruments in courts, case numbers 17cv314286, 17cv310716 and 6th DCA various cases while there were multiple stay orders on file in court records, both from Superior court as well as 6th DCA.

149.    As a direct and proximate result of Defendants' violation of Clayton Act as set forth above, Plaintiff has suffered, and continues to suffer, general and special damages in an amount to be determined at trial.

SEVENTH CAUSE OF ACTION
(Identity Theft)

(Against NATIONSTAR, U.S. BANK NATIONAL ASSOCIATION, AS PURPORTED TRUSTEE  FOR GREENPOINT MORTGAGE FUNDING  TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR2, CLEAR RECON CORP., XOME INC. and DOES 1-100)

150.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

151.    Plaintiff is informed and believes and thereon alleges that he did not execute the alleged Note and that the signature thereon resulted from identity theft.  Plaintiff does not know who was responsible for the original forgery of his signature, but NATIONSTAR, U.S. BANK NATIONAL ASSOCIATION, AS PURPORTED TRUSTEE  FOR GREENPOINT MORTGAGE FUNDING  TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR2 and CLEAR RECON have used the forged alleged NOTE to support the trustee's sale of the Subject land.

152.    On or about July 20, 2017, Plaintiff filed with the Santa Clara (California) police a complaint alleging identify theft.  One or about July 27, 2017, Plaintiff filed with the Federal Trade Commission a report alleging identity theft against CLEAR RECON and NATIONSTAR alleging identity theft.

153.    In a letter dated December 16th, 2023 Nationstar send a letter to Plaintiff that Plaintiff's identity was stolen, Plaintiff is in possession of this letter and will present this Nationstar's letter together with other proof mentioned, Id., to this Court.

154.    Despite Plaintiff's reports to Defendants and to law enforcement agencies such as Police and Federal Trade Commission ("FTC") that Plaintiff's identity had been stolen, Defendants continued to report derogatory credit reporting to credit agencies on an unsubstantiated alleged debt and despite judge Folan's Order, Id.

155.    California allows a victim of "identity theft" to bring an action (or file a cross-complaint) against a "claimant" who is attempting to collect a debt from the victim of identity theft to establish that the person is a victim of identity theft in connection with the claimant's claim against that person. The victim who proves, by a preponderance of the evidence, that he or she is a victim of identity theft as to a particular claim (whether the claimant was responsible for the identity theft or merely used documentation generated as a result of identity theft), is entitled to a judgment for any or all of the following, as appropriate:

(1) A declaration that he or she is not obligated to the claimant on that claim.

(2) A declaration that any security interest or other interest the claimant had purportedly obtained in the victim's property in connection with that claim is void and unenforceable.

(3) An injunction restraining the claimant from collecting or attempting to collect from the victim on that claim, from enforcing or attempting to enforce any security interest or other interest in the victim's property in connection with that claim, or from enforcing or executing on any judgment against the victim on that claim.

(4) If the victim has filed a cross-complaint against the claimant, the dismissal of any cause of action in the complaint filed by the claimant based on a claim which arose as a result of the identity theft.

(5) Actual damages, attorney's fees, and costs, and any equitable relief that the court deems appropriate. In order to recover actual damages or attorney's fees in an action or cross-complaint filed by a person alleging that he or she is a victim of identity theft, the person shall show that he or she provided written notice to the claimant that a situation of identity theft might exist, including, upon written request of the claimant, a valid copy of the police report or the Department of Motor Vehicles investigative report promptly filed pursuant to Section 530.5 of

VERIFIED CLAIM

the Penal Code at least 30 days prior to his or her filing of the action, or within his or her cross-complaint pursuant to this section.

## EIGHT CAUSE OF ACTION
### ("Mail fraud")
### Against All Defendants & DOES 1-100

156.   Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

157.   Defendants used US mail system to fraudulently obtain monies and property from Plaintiff, Defendants are therefore  in violation of 18 U.S.C § 1961 [mail fraud is a racketing activity] & § 1341 [mail fraud includes using the U.S. mail system to send an item for the purposes of a scheme to defraud or obtain money or property by means of false pretences.]

158.   Because no money is due and was due to any of the Defendants and Defendants and their  co parties agent(s) principle(s) refused to verify the alleged debt and the amount of the alleged debt under Oath as required pursuant to the rules Id, and judge Folan's order, Plaintiff can sue Defendants for violation of 18 U.S.C §§ 1961 & 1341 and collect on Plaintiff's economic, special, general and punitive damages.

159.   Pursuant to 18 U.S.C § 1341 violations are fined not more than $1,000,000 or imprisoned not more than 30 years, or both per count.

160.   All Defendants are liable for their acts.

161.   Plaintiff suffered harm and damages, as stated, *supra*, as a direct and proximate result of those acts in an amount to be determined by jury of Plaintiff's peers at 7th Amendment.

## NINTH CAUSE OF ACTION
### ("Wire Fraud")
### Against All Defendants & DOES 1-100

162.   Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

31

163.    As set forth above, Defendants actions includes mail fraud and wire fraud, to wit: using the US Postal Service as part of an illegal scheme (mail fraud) or using the banking system to commit a crime (wire fraud).

164.    Plaintiff alleges, certainly considering the scale of the problem (millions of false instruments recorded including assignments and even satisfaction of mortgage), the DOJ and the state Attorney General should be looking at these crimes as they are having widespread negative effect on the community at large, including the livelihood of Plaintiff.

165.    All Defendants are liable for their acts.

166.    Plaintiff suffered harm and damages, as stated, *supra*, as a direct result of those acts.

167.    **WHEREFORE**, Plaintiff demands Judgment, including interest, against all Defendants, jointly and severally, for actual, general, special, compensatory damages in the amount of $9,000,000, plus the costs of this action, including attorney's fees and such other relief deemed to be just, fair, and appropriate or at the discretion of the Plaintiff's jury of peers pursuant to 7th Amendment.

TENTH CAUSE OF ACTION<br>("Aiding and Abetting Tort")<br>Against All Defendants & DOES 1-100

168.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

169.    Plaintiff alleged on information and belief, Defendant Nationstar controlled all aspects of their misconduct. Nationstar is alleged to own 100 % of Defendant Xome Inc. and either owns Defendant Clear Recon Corp. and/or has invested in Defendant Clear Recon Corp.

170.    All Defendants committed conspiracy to steal Plaintiff's home through various unlawful acts as set forth above and in the process  aided and abetted each other to violate Plaintiff's inalienable rights to his private land.

171.    As the direct and proximate result of Defendants violation of law in aiding and abetting Tortuous act committed and perfected by all defendants against Plaintiff, as set forth above, Plaintiff has suffered and continues to suffer statutory, special and punitive economic damages in an amount to be determined  in Plaintiff's trial by jury at 7th Amendment.

VERIFIED CLAIM

ELEVENTH CAUSE OF ACTION
("Tort")
Against All Defendants & DOES 1-100

172. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

173. A tort is a civil wrong, other than breach of contract, that causes a claimant to suffer loss or harm, resulting in legal liability for the person who commits the tortious act, Glanville Williams, ... providing grounds for lawsuit. *Learning the Law*. Eleventh Edition. Stevens. 1982. p. 9.

174. Defendants tortuous acts, as set forth above, caused economic, emotional and physical harm to Plaintiff. For example, Defendants refused to return well in excess of a dozen writs and must appear and show cause why Defendants are not in contempt of the writs for not returning the writs and why Plaintiff is not entitled to several tort claims to purge Defendants' contempt of the writs for not returning the writs.

175. As the direct and proximate result of Defendants violation of law in Defendants'' tortuous acts by all defendants against Plaintiff, as set forth above, Plaintiff has suffered and continues to suffer statutory, special and punitive economic damages in an amount to be determined in Plaintiff's trial by jury at 7th Amendment.

TWELFTH CAUSE OF ACTION
(Violation of Violation of American Disability Act (ADA) and Stay Orders)
Against All Defendants & DOES 1-100

176. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

177. The Americans with Disabilities Act (ADA) is a federal law applicable to states that prohibits discrimination against individuals with disabilities. A person is considered to have a disability if they possess a mental or physical impairment that "substantially limits" a major life activity.

178. Plaintiff alleges although there were multiple stay orders in Case Numbers 17cv314286 and 17cv310716-Santa Clara Superior Court, as well as in 6th DCA court orders in several of Appellant cases, Defendants through their agents continued to violate court orders to stay

33

proceedings, by Defendants' filing numerous instruments in court, despite the stay orders, and most times Defendants did not even serve Plaintiff.

179.    As mentioned above, Plaintiff was specifically ordered, by multiple LICENSED STATE OF CALIFORNIA PHYSICIANS, from 2017 to May of 2024, to stay away from any and all legal proceedings or face death.

180.    Plaintiff nearly died in a court hearing in March of 2023 and had to be rushed to emergency hospital for emergency surgery where Plaintiff was diagnosed with having suffered a brain stroke and a heart surgery was done on Plaintiff.

181.    Despite Plaintiff's medical conditions and despite multiple court orders to stay the cases, Defendants kept filing instruments in court, most times not even serving Plaintiff which severely damaged Plaintiff economically, physically and emotionally.

182.    As the direct and proximate result of Defendants' violation of stay orders, and ADA rules, as set forth above, Plaintiff has suffered and continues to suffer statutory, special and punitive economic damages in an amount to be determined in Plaintiff's trial by jury at 7th Amendment.

### THIRTEENTH CAUSE OF ACTION
("Report of Unlawful Adverse Credit Reporting to Credit Agencies")
Against All Defendants & DOES 1-100

183. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

184. Defendants despite Plaintiff's Identity Theft Report to various government agencies and to Defendants, reported derogatory credit reporting to credit agencies on an unsubstantiated alleged debt, (See *Bushell v. JPMorgan Chase Bank, N.A.* (2013) 220 Cal.App.4th 915, 928 [finding that damage to credit sufficient to allege damages].) Therefore, Plaintiff allege sufficient facts to constitute a violation for Report of Unlawful Adverse Credit Reporting to Credit Agencies.

185. As the direct and proximate result of Defendants' violation of law in Defendants' reporting derogatory credit reporting to credit agencies on an unsubstantiated debt against Plaintiff, as set forth above, Plaintiff has suffered and continues to suffer statutory, special and punitive economic damages in an amount to be determined in Plaintiff's trial by jury at 7th Amendment.

34

FOURTEENTH CAUSE OF ACTION
("Violation of Penal Code Section 484 and Trebling Pursuant to Section 496, Subdivision (C)")
Against All Defendants & DOES 1-100

186.   Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

187.   The Court has jurisdiction over the said Defendants' violation of Penal Code section 484—which defines the crime of theft—establishes a criminal rather than a civil violation. However, Penal Code section 496, subdivision (c) permits any person who has been injured by the retention, purchase, or withholding of stolen property to bring a civil action for three times the amount of his or her actual damages, costs, and attorney fees. (*Bell v. Feibush* (2013) 212 Cal.App.4th 1041, 1044.)

188.   Defendants have refused to return Plaintiff's stolen monies and recoupment claims. Because Defendants violation of section 496, who have been aided and abetted by other DOE Defendants, as the basis for Plaintiff's civil claim, Defendants can not raise the issue of whether Plaintiff states a cause of action for retention of Plaintiff's stolen property, as set forth above, FDCPA, mail fraud, wire fraud, racketeering, and other Defendants violation of law, Id.

189.   Plaintiff suffered harm and damages, as stated, *supra*, as a direct and proximate result of Defendants' acts in violation of Penal Code Section 484 and Trebling Pursuant to Section 496, Subdivision (C), in an amount to be determined by jury of Plaintiff's peers at 7th Amendment.

FIFTEENTH CAUSE OF ACTION
(ACCOUNTING)
Against All Defendants & DOES 1-100

190.   Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

191.   To date, Plaintiff has made many accounting requests to NATIONSTAR, and is yet to receive a detailed accounting calculation and summary of the payoff balance that NATIONSTAR is demanding in the alleged Note. Such payoff balance should include the unpaid balance, accrued interest, daily interest charge, Corporate Advance and all other fees,

35

costs or expenses comprising the alleged payoff sum, and proof that such a sum was provided to Plaintiff.

192.    Plaintiff is lawfully entitled to such an accounting, yet Nationstar has refused to provide one in a timely manner in compliance with California Civil Code Section 2943. Plaintiff requires said accounting in order to be fully apprised of the details of the payoff sum being demanded, and to thereby be able to assess the propriety of the payoff demand.

193.    Consequently, NATIONSTAR's refusal to send such an accounting has wrongfully precluded Plaintiff from reinstating and/or paying off the alleged Note.

## SIXTEENTH CAUSE OF ACTION
### (Set Aside Sale)
### (Against All Defendants and Does 1-100)

194.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

195.    For the reasons stated above, Plaintiff requests that the Trustee's Deed Upon Sale, which was recorded on July 20, 2017 in the Official Records of the Santa Clara County Clerk-Recorder as Document no. 23707542, be set aside and determined to be of no force and effect.

## SEVENTEENTH CAUSE OF ACTION
### ("5th Amendment Violation and Injunction")
### Against All Defendants & DOES 1-100

196.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

197.    Defendants' violated Plaintiff's 5th Amendment right to due process, as set forth above and therefore, Plaintiff is entitled for an injunction against any and all Defendants' harassment of Plaintiff, without any of the Defendants' standing.

198.    As a direct and proximate results of Defendants' violation of Plaintiff's 5th Amendment right to due process, as set forth above, Plaintiff asks this court for an injunction against the conduct of Defendants, suffered and continue to suffer economic, physical and emotional damages, in an amount to be determined by jury of Plaintiff's peers at 7th Amendment.

VERIFIED CLAIM

EIGHTEENTH CAUSE OF ACTION
(NEGLIGENCE)
Against ALL DEFENDANTS & DOES 1-100

199.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

200.    Defendant NATIONSTAR, acting as Plaintiff's alleged lender and/or alleged servicer, undertook a review of Plaintiff's alleged loan modification and foreclosure alternative requests, and having done so they owed Plaintiff the duty to exercise reasonable care in processing and reviewing his requests prior to proceeding with foreclosure proceedings.

201.    Defendant NATIONSTAR breached its duty by: (1) failing to assign a SPOC; (2) failing to provide Plaintiff with an accounting of his Note so that Plaintiff can reinstate his loan; (3) failing to review Plaintiffs loan modification application in a timely manner; (4) failing to provide a good faith review of Plaintiffs loan modification application; (5) failing to provide any determination, including a written determination, of Plaintiff's loan modification application; (6) failing to answer the many phone calls and messages Plaintiff made requesting for help; (7) failing to properly serve Plaintiff with a NOS; (8) failing to allow Plaintiff to reinstate his loan even though he was, and still is, willing and able to tender the reinstatement funds; and (9) initiating and continuing foreclosure in violation of public policy and statutory restrictions on foreclosures.

202.    The transaction was intended to affect Plaintiff and it was entirely foreseeable that the aforementioned acts would cause significant harm to Plaintiff in that the decision on Plaintiff's alleged loan modification application, and the decision to accept Plaintiffs reinstatement funds, would determine whether Plaintiff could keep his land.

203.    The injury to Plaintiff is certain. The improper denial of Plaintiff's Unemployment Program application and loan modification application, as well as ignoring Plaintiff's many requests for help, deprived Plaintiff of the possibility of obtaining loss mitigation assistance.

204.    There is a close connection between Defendants' conduct and Plaintiffs injuries. Defendants' conduct in not assigning a SPOC, not sending Plaintiff an accounting of the Note so that Plaintiff could reinstate his alleged Note, failing to timely review and make a determination of Plaintiff's

VERIFIED CLAIM

alleged loan modification application, failing to answer Plaintiff's questions and pleas for help, precluded Plaintiff from obtaining foreclosure prevention alternatives to which he was entitled.

205.    The policy of preventing future harm favors imposing a duty of care on an entity in Defendants' position. In fact, this is evidenced by the fact that the State of California, through legislation, has enacted the HBOR in an effort to prevent future harm from unnecessary and wrongful foreclosure.

206.    As a direct and proximate result of the negligence and carelessness of Defendants and their representatives, Plaintiff has suffered, and continues to suffer, general and special damages in an amount to be determined at trial.

NINETEENTH CAUSE OF ACTION
(Negligent Infliction of Emotional Distress)
(Against NATIONSTAR, U.S. BANK NATIONAL ASSOCIATION, AS PURPORTED TRUSTEE  FOR GREENPOINT MORTGAGE FUNDING  TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR2, CLEAR RECON CORP. and DOES 1-100)

207.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

208.    The tort of negligent infliction of emotional distress' (NIED) underlying concept is that one has a legal duty to use reasonable care to avoid causing emotional distress to another individual. If one fails in this duty and unreasonably causes emotional distress to another person, that actor will be liable for monetary damages to the injured individual. The tort is to be contrasted with intentional infliction of emotional distress in that there is no need to prove intent to inflict distress. That is, an accidental infliction, if negligent, is sufficient to support a cause of action.

209.    There are well documented by multiple LICENSED STATE OF CALIFORNIA PHYSICIANS and specialist in Neurology that Plaintiff sufferings, including but not limited to a brain stroke during a so called mistrial [by ambush] in March of 2023 were due to [needless] "legal stressors".  Among those Physicians' notes, dated from 2017 to and including 2024, were notes from a specialist in neurology at Kaiser Permanente where  Plaintiff has been undergoing medical care, that should Plaintiff continue to appear in any shape and form in any legal proceedings, Plaintiff would die, and Plaintiff nearly did die in March of 2023 during a trial by jury and despite multiple physicians' notes on the records, filed under seal,  to Plaintiff not to participate in any legal proceedings.

38

210.    Despite these medical notes, ordering Plaintiff not to attend in any legal proceedings, and despite multiple lower and higher state court orders of stay (6th DCA), Defendants continued to file instruments in court during court orders to stay and during Plaintiff's unavailability due to his medical conditions, sometimes without even serving Plaintiff, which would require Plaintiff to respond to those false Defendants' instruments and cause additional pain and suffering to Plaintiff.

211.    As mentioned, Plaintiff nearly died during a mistrial by ambush in the state court in March of 2023 and had to be rushed to an emergency hospital for emergency heart surgery and suffered a brain stroke.

212.    While Plaintiff was waiting to be operated on, in intensive care, the clerk of judge Kulkarni called Plaintiff's cell phone and demanded Plaintiff to go back to the trial. When Plaintiff told that Clerk that Plaintiff was awaiting to undergo emergency surgery, the Clerk responded that she was just doing her job.

213.    Plaintiff reserves the right to sue all actors involved in the state court in appropriate times.

214.    As a direct result of the negligence and wrongful acts alleged herein, which have resulted, inter alia, in Defendants' filing false papers on the title to Plaintiff's land and Defendants' harassment of Plaintiff, during Plaintiff's medical conditions and stay orders, without any standing, Plaintiff has suffered serious emotional distress. He has suffered anguish, nervousness, anxiety, worry, brain stroke, under went emergency heart surgery due to needless legal stressors, shock, humiliation and pain throughout his body as a result of these wrongful acts.

215.    As a direct and proximate result of the Defendants' violations and their negligent infliction of emotional distress, as set forth above, by Defendants and their representatives, Plaintiff has suffered, and continues to suffer, general and special damages in an amount to be determined at trial.

### TWENTIETH CAUSE OF ACTION
(Breach of fiduciary duty pursuant to California Commercial Code 3307 and recoupment)

(Against NATIONSTAR, U.S. BANK NATIONAL ASSOCIATION, AS PURPORTED TRUSTEE FOR GREENPOINT MORTGAGE FUNDING TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR2, CLEAR RECON CORP., XOME INC. and DOES 1-100)

VERIFIED CLAIM

216.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

217.    California Commercial Code 3603 directs this Court of Records to take as mandatory judicial notice that when Plaintiff tendered the payment, the tender was refused and was not returned, the alleged debt is discharged, " ...(b) If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge...".

218.    Plaintiff, pursuant to California Commercial Code 3603(b), California Commercial Code 3307, and California Commercial Code 3306 noticed Defendants of breach of fiduciary duty at California Commercial Code 3307 and Petitioner's subsequent entitlement to recoup Plaintiff's monies at, inter alia, California Commercial Code 3306 ["...is subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds.."], Cal. Comm. Code 3306.

219.    Accordingly, Plaintiff asks this court for an order discharging the alleged debt at California Commercial Code 3603(b), and for accounting showing all the proceeds that Defendants obtained which lawfully belongs to Plaintiff at, inter alia, California Commercial Code 3306.

TWENTY FIRST CAUSE OF ACTION<br>(Violation of Cal. Civ. Code §1812.600(a))<br>Against All Defendants & DOES 1-100

220.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

221.    Plaintiff alleges that Plaintiff upon a thorough search at Santa Clara County Recorder and California Secretary of State did not find any bond for neither the auctioneer nor the auction company as required by law at Cal. Civ. Code §1812.600(a).

222.    The conduct of all Defendants were willful and malicious in inter alia employing an unbonded auction company and auctioneer in violating Plaintiff's rights to his sovereign land.

223.    As a direct and proximate result of Defendants' violation of Cal. Civ. Code §1812.600(a) in employing unbonded auctioneer and auction company to commit the above mentioned misconduct, as set forth above,  Plaintiff has suffered, and continues to suffer, general and special damages in an amount to be determined at trial.

40

VERIFIED CLAIM

TWENTY SECOND CAUSE OF ACTION
(Violation of California Business & Professions ("B&P") Code sections 22350 – 22360 )
Against All Defendants & DOES 1-100

224.   Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

225.   California Business & Professions ("B&P") Code sections 22350 – 22360 govern registration of process servers. According to California law, anyone who performs **more than 10 services of process in a year must register, pay fees, and file a $2000 bond. Failure to register is a misdemeanor**.

226.   Plaintiff alleges that Kellie Emmons by her own admission is not a bonded process server, despite Emmons' acting as a process server for more than 22 years, Id.

227.   Plaintiff alleges the specific orders of Judge Overton were not adhere to, Case Number 17cv314286, Superior Court of California, County of Santa Clara, and the service of the complaint and the "SUMMONS" were not complete despite judge Overton's order.

228.   Despite unlawful and deficient service of process by an unbonded process server, Defendants continued to harass, intimidate, demonize and even threaten Plaintiff and Plaintiff's family

229.   As a direct and proximate result of Defendants' violation of California Business & Professions ("B&P") Code sections 22350 – 22360 in employing unbonded process server and deficient service of process, as set forth above,  Plaintiff has suffered, and continues to suffer, general and special damages in an amount to be determined at trial.

TWENTY THIRD CAUSE OF ACTION
(Violation of Unfair Competition Law ("UCL"))
Against All Defendants & DOES 1-100

230.   Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

231.   The Unfair Competition Law defines unfair competition to include any "unfair," "unlawful," or "fraudulent" business act or practice.  California Business and Professions Code §17200, et seq. The Act also provides for injunctive relief and restitution for violations.

41

VERIFIED CLAIM

232.    By virtue of the acts and omissions of the defendants, they have engaged in unfair competition within the meaning of California Business and Professions Code §17200, thereby entitling Plaintiff to injunctive and restitutionary relief as provided by California Business and Professions Code §17203. More specifically, Defendants have failed to properly review Plaintiff's application for a loan modification, in violation of Civil Code Section(s) 2923.6 and 2923.7, and have also failed to provide Plaintiff with an accounting of his Note so that he could reinstate his alleged loan, and proceeded with the trustee's sale notwithstanding the irregularities set forth in this claim. Even after Plaintiff tried to inquire about the status of his account, no one provided help. Plaintiff was also never served with the recorded NOS, and was never able to pursue foreclosure prevention alternatives prior to the filing of the NOD and NOS and subsequent trustee's sale.

233.    Plaintiff has been harmed by the unlawful actions of all Defendants, as set forth above.

234.    In order to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services, the UCL provides civil remedies for unfair competition.

235.    See Bus. & Prof. Code, § 17200., "'Virtually any law or regulation – federal, state, statutory or common law – can serve as [a] predicate for a … [section] 17200 'unlawful' violation.'" (*Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1383 [quoting *Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 681].)

236.    Plaintiff alleges that Defendants violated BPC 17200 by failing to comply with Civil Code sections 2923.55, 2923.6 and 2924.17, Cal. Civ. Code 2924(h) Subdiv(g), Sherman Anti Trust Act, Bid rigging and other violations, and in the process, severely damaged Plaintiff economically, physically and emotionally.

237.    Plaintiff suffered harm and damages, as stated, *supra*, as a direct and proximate result of those acts in violation of BPC 17200, in an amount to be determined by jury of Plaintiff's peers at 7th Amendment.

238.    The aforementioned acts were willful, oppressive, and malicious, in that the Defendants engaged in acts of unfair competition with the deliberate intent to injure Plaintiff. Plaintiff is therefore entitled to payment of damages in a sum sufficient to punish the Defendants and to set an example and deter such conduct in the future.

VERIFIED CLAIM

239.    As a direct and foreseeable result of the Defendants' violation of Business and Professions Code §17200, Plaintiff has suffered, and will continue to suffer, substantial and irreparable harm, including but not limited to the possible loss of the Subject land because Defendants proceeded to initiate a wrongful non-judicial foreclosure on the Subject land, lost the opportunity to pursue other foreclosure prevention options, the loss of the opportunity to obtain a permanent modification, the back dues and interest that has accrued to date that would not have accrued but for Defendants' action, the cost and expense of the instant pending litigation, and other actual and consequential damages that will be proven on date of trial.

240.    To state a claim based on the unlawful prong, Plaintiff must allege that Defendant's practices are "forbidden by law, be it civil, criminal, federal, state, or municipal, statutory, regulatory, or court made". *Saunders v. Superior Court,* 27 Cal. App. 4th 832, 838-39 (1994).

241.    Plaintiff has alleged that Defendant has harmed Plaintiff in Defendant' inter alia, falsely furnishing several inconsistent amounts of alleged debt, allegedly due, even when specifically ordered by judge Folan, Id.; filing of false and or otherwise fraudulent notice of trustee sale on the due required date to comply with judge Folan's order, Id., violated  Sherman Anti Trust Act, violated Bid Rigging, violated Cal. Civ. Code 2924(h) Subdiv. (g) among numerous other criminal, civil, federal, state, statutory, regulatory and or court made law, Id., also *See Berryman v. Merit Property Mgmt., Inc.,* 152 Cal. App 1544, 1554 (2007) ("a violation of another law is a predicate for stating a cause of action" under unlawful prong).

242.    Plaintiff alleges the Defendants' numerous  misconduct, Id. is **further confirmation and additional preponderance of evidence of their malice towards Plaintiff.**

243.    **In evaluating whether sufficient allegations of malice, oppression or fraud have been alleged, the complaint will be read as a whole so that even conclusory allegations may suffice when read in context with facts alleged as to the defendant's wrongful conduct.** (*Perkins v. Sup.Ct. (General Tel. Directory Co.)* (1981) 117 CalApp.3d 1, 6-7.) In defining malice for purposes of awarding punitive damages, Civil Code section 3294, subdivision (c)(1) provides: "'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or conduct which is carried on by the defendant with a conscious **disregard of the rights** or safety **of others.".**

244.    To support an award of punitive damages on the basis of conscious disregard of others, a plaintiff "must establish that the defendant was aware of the probable dangerous consequences of

43

VERIFIED CLAIM

his conduct, and that he willfully and deliberately failed to avoid those consequences." (*Taylor v. Superior Court* (1979) 24 Cal.3d 890, 895-896.)  See Taylor v. Superior Court , 24 Cal.3d 890, "*As we ourselves have recently observed, in order to justify the imposition of punitive damages the defendant '"... must act with the intent to vex, injure, or annoy, or with a **conscious disregard of the plaintiff's rights**. [Citations.]"' (Italics added; Neal v. Farmers Ins. Exchange (1978) 21 Cal.3d 910, 922 [148 Cal.Rptr. 389, 582 P.2d 980], quoting from Silberg v. California Life Ins. Co. (1977) 11 Cal.3d 452, 462 [113 Cal.Rptr. 711, 521 P.2d 1103]; accord, Seimon v. Southern Pac. Transportation Co. (1977) 67 Cal.App.3d 600, 607 [136 Cal.Rptr. 787]; G. D. Searle & Co. v. Superior Court (1975) 49 Cal.App.3d 22 [122 Cal.Rptr. 218].)*"

245.    Plaintiff alleges, here, the misconduct of Defendants nearly caused Plaintiff to die, Id., through conspiracy and racketeering before, during and after the mistrial in March of 2023, in violation of Title 42 USC §§ 1983 and 1985 [18 USC §§ 241 and 242 implicated with a death sentence for all racketeers, since despite Plaintiff multiple physicians' orders to Plaintiff not to participate in any legal proceedings or face death, the racketeers in the state court together with Defendants' attorneys forced Plaintiff to [specially] appear and file instruments in court, despite several lower and higher California Court orders (6th DCA) of stay, which nearly killed Plaintiff by and through needless "legal stressors", Id.].

246.    As a direct and proximate result of Defendants' violation of UCL as set forth above,  Plaintiff has suffered, and continues to suffer, general and special damages in an amount to be determined at trial.

TWENTY FOURTH CAUSE OF ACTION
("Fraudulent Concealment")
Against All Defendants & DOES 1-100

247.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

248.    Fraudulent Concealment  is defined as the deliberate hiding or non-disclosure of an important fact or reason for action, particularly by someone who has an obligation to reveal such data to another party. This party then either takes action or does not take action due to the lack of information and endures a loss as a result.

44

249.    Plaintiff alleges as a direct and proximate results of Defendants' deliberate non-disclosure of inter alia, the alleged debt amount allegedly due and the alleged reinstatement amount, allegedly due and despite judge Folan's order dated February 6th, 2017 to Defendants to authenticate the amount of the alleged debt, if any, and the alleged reinstatement amount, if any, by February 8th, 2017, Plaintiff's has been harmed economically, physically and emotionally, in an amount to be determined in a trial by jury of Plaintiff's peers.

## TWENTY FIFTH CAUSE OF ACTION
("Intentional Infliction of Emotional Distress")
Against All Defendants & DOES 1-100

250.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

251.    Defendants knowingly and maliciously, when they were well aware that none of the Defendants have standing, and while there were numerous lower state court and higher state court orders of stay due to Plaintiff's medical conditions caused by Defendants' unwarranted "legal stressors" as determined by Plaintiff's several LICENSED STATE OF CALIFORNIA PHYSICANS and specialist, continued to file instruments in court during Plaintiff's medical conditions and stay orders.

252.    These Defendants' acts caused irreparable harm to Plaintiff.

253.    Defendants intentionally inflicted emotional stress to Plaintiff, without standing. To recover punitive damages, a Plaintiff must plead facts sufficient to show that the Defendant is guilty of oppression, fraud, or malice. (See Civ. Code, § 3294.) "'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights and safety of others." (Civ. Code, § 3294, subd. (c)(1).) "To establish conscious disregard, the plaintiff must show 'that the defendant was aware of the probable consequences of his conduct and that he willfully and deliberately failed to avoid the consequences.' [Citation.]" (See *Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1055.)

VERIFIED CLAIM

254.    As a direct and proximate results of Defendants' intentional infliction of emotional stress to Plaintiff, as set forth above, Plaintiff suffered and continue to suffer economic, physical and emotional damages, in an amount to be determined by jury of Plaintiff's peers at 7th Amendment.

TWENTY SIXTH CAUSE OF ACTION
(Quiet Title)
(Against all Defendants and DOES 1-100)

255.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

256.    Plaintiff is the equitable owner of the Subject land.

257.    Plaintiff seeks to quiet title against all claims of all Defendants, including but not limited to U.S. BANK NATIONAL ASSOCIATION, AS PURPORTED TRUSTEE  FOR GREENPOINT MORTGAGE FUNDINGTRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR2 and Nationstar by and through its purchase of the Subject land at the July 6, 2017 trustee's sale.  In fact, U.S. BANK NATIONAL ASSOCIATION, AS PURPORTED TRUSTEE FOR GREENPOINT MORTGAGE FUNDINGTRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR2, Xome Inc., Clear Recon Corp. and Nationstar Mortgage LLC. have no right to title nor interest in the Subject land and no right to entertain any rights of ownership including demanding possession or filing cases for unlawful detainer.  U.S. BANK NATIONAL ASSOCIATION, AS PURPORTED TRUSTEE  FOR GREENPOINT MORTGAGE FUNDINGTRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR2 had no right to title to the subject land because it was wrongfully obtained, for the reasons set forth above, and because, as Plaintiff is informed and believes, the alleged Note and alleged DOT are invalid because they contain his forged signature.

258.    Additionally, Plaintiff as alleged trustor revoked Defendants' power of attorney that they never had, twice in two different years, and noticed all Defendants. Plaintiff's revocation of power of attorney served on the Defendants and their culprits dated 8/18/2015 and 8/18/2016 filed in California Secretary of State with Instrument Numbers 50586000002 and 56833470003 with the proof of service to the Defendants and their culprits at least twice with registered and

VERIFIED CLAIM

certified mail- almost 1 and 2 years prior to  Defendants' misconduct labeled as 'foreclosure sale' of a sovereign land dated July 6th, 2017.

259.    Further, Defendants' claims are without any right, and Defendants have no title in the subject land, as a result of their noncompliance with non-judicial foreclosure statutes and RESPA.  In addition, there is an unexplained broken chain of ownership of the alleged DOT and alleged Note, even if they are found by the court to be valid instruments.

260.    Plaintiff should not be required to offer a tender of the full amount of the obligation (once it is determined) but, at most, sufficient funds to reinstate the alleged Note, assuming it is proven to be valid and held by U.S. BANK NATIONAL ASSOCIATION, AS PURPORTED TRUSTEE FOR GREENPOINT MORTGAGE FUNDINGTRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR2. Plaintiff is prepared to tender any amount the court determines to be necessary to reinstate the alleged Note, should it be found to be valid.

261.    Plaintiff seeks a judicial determination that the title to the Subject land is vested in Plaintiff alone and that Defendants be declared to have no title nor estate in such land except to the extent U.S. BANK NATIONAL ASSOCIATION, AS PURPORTED TRUSTEE  FOR GREENPOINT MORTGAGE FUNDINGTRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR2 can show that it holds a valid lien against the Subject land.

### TWENTY SEVENTH CAUSE OF ACTION
### (VIOLATION OF CAL. CIVIL CODE SECTION 2923.6)
### Against NATIONSTAR & DOES 1-100

262.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

263.    California Civil Code section 2923.6(c) reads in pertinent part that "if a borrower submits a complete application for a first lien loan modification ... A mortgage servicer... shall not record... a notice of default, a notice of sale or conduct a  trustees' sale... while the complete first lien loan modification application is pending."

264.    Pursuant to California Civil Code section 2923.6(f)(2) "Following the denial of a first lien loan modification application, the mortgage servicer shall send a written notice to the borrower identifying the reasons for denial".

47

265.    Furthermore, pursuant to California Civil Code section 2923.6, the mortgage servicer, trustee, beneficiary, or authorized agent shall not record a *notice of default* or *notice of sale* or conduct a trustee's sale until any of the follow occurs (emphasis added):

(c)(l) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired...
(d) If the borrower's application for a first lien loan modification is denied, the borrower shall have at least 30 days from the date of the written denial to appeal the denial....

266.    Here, Plaintiff submitted a complete loan modification package in or around 2015.

267.    While Plaintiff was in review for an alleged loan modification, CLEAR RECON filed a NOD on the Subject land.

268.    By letter dated May 3, 2017, Defendant NATIONSTAR notified Plaintiff's then-attorneys that Plaintiff's request for loan modification/mitigation had been rejected. By letter dated June 12, 2017, NATIONSTART denied his appeal of that decision.

269.    On or about September 9, 2015, CLEAR RECON, at the request of NATIONSTAR, improperly filed a NOD on the Subject land, while Plaintiff was still in review for his alleged loan modification application.

270.    Plaintiff then made many more phone calls to NATIONSTAR to ask why a NOD was filed while he was in review for an alleged  loan modification, but his calls and messages were never returned.

271.    Unbeknown to Plaintiff, on or about February 8, 2017, while Plaintiff was still in review for his alleged loan modification application, CLEAR RECON improperly filed a NOS on the Subject land. Plaintiff was also never served with the recorded NOS.

272.    On or around March 2017, Plaintiff finally got a response from NATIONSTAR saying that they received his complete loan modification application package, but nothing had been done beyond that.

273.    Throughout his alleged loan modification review, Plaintiff contacted NATIONSTAR on multiple occasions to inquire about his alleged loan modification submission.

274.    Although NATIONSTAR notified Plaintiff shortly before the trustee's sale that it had found Plaintiff ineligible for an alleged loan modification, it violated Section 2923.6(c) in having

recorded the NOD and Notice of Sale while Plaintiff's loan modification application was still pending.

275.   Defendants proceeded with the trustee's sale on July 6, 2017, notwithstanding having informed the general public and Plaintiff that the sale date had been postponed to July 20, 2017, and 45 minutes after the time at which the sale had been scheduled, CLEAR RECON having received last minute instructions from NATIONSTAR that it proceed with the sale, and without ever providing Plaintiff with a proper accounting of his alleged Note so that he could reinstate his alleged loan.

276.   As a direct and proximate result of the negligence and carelessness of the Defendants, as set forth above, Plaintiff has suffered damages in an amount not presently ascertained and will be proved at trial.

TWENTY EIGHTH CAUSE OF ACTION
(VIOLATION OF CAL. CIVIL CODE SECTION 2923.7)
Against NATIONSTAR & DOES 1-100

277.   Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

278.   California Civil Code section 2923.7 requires that large servicers set up and maintain a single point of contact for borrowers seeking foreclosure alternatives, and states in pertinent part:

(a) Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact ...who is (b) responsible for ... (1) Communicating the [loan modification] process ... (2) Coordinating receipt of all [loan modification] documents; (3) Having access to current information and personnel [with knowledge of the current status]; (4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any; [and] (5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

279.   After Plaintiff experienced financial hardships and reluctantly fell behind on his alleged mortgage payments, he contacted NATIONSTAR and requested loss mitigation assistance. Specifically, Plaintiff asked for an accounting of his Note so that he could reinstate the alleged loan, because his friends and family were able to help provide the alleged reinstatement funds.

49

VERIFIED CLAIM

280.    Plaintiff was never assigned a SPOC to help him with his loss mitigation requests, as required by section 2923.7. Consequently, he was never provided with an accounting to reinstate his alleged loan, and he was also never provided with a proper review of his alleged loan modification application.

281.    Even after Plaintiff applied for an alleged loan modification, per NATIONSTAR's instructions, Plaintiff was still not assigned a SPOC to help him with his alleged loan modification review.

282.    When Plaintiff called to check the status of his alleged loan modification application, NATIONSTAR confirmed that they received the application. However, since Plaintiff was never assigned a SPOC, he never received any determination on the status of his application.

283.    Plaintiff contacted NATIONSTAR on several occasions all throughout 2015, 2016 and 2017 to inquire about his alleged loan modification application, and left dozens of messages to NATIONSTAR asking for help.  However, Plaintiffs calls were never returned.  When Plaintiff was able to get a hold of a NATIONSTAR representative, his calls were transferred from one individual to another, and no one helped him.

284.    In fact, Plaintiff never spoke to the same individual at NATIONSTAR twice. Each new representative whom Plaintiff spoke with had to research his file from the beginning, as they were not privy to any information provided to the previous representative.

285.    Furthermore, on or about February 8, 2017, CLEAR RECON improperly filed a NOS on the Subject Property, despite the fact that section 2923.7 requires foreclosure proceedings to be stopped while a borrower is being considered for foreclosure prevention alternatives.

286.    Such actions do not comport with the specific requirements outlined by the Homeowners' Bill of Rights ("HBOR"), and does not protect Plaintiff as the legislature intended by adopting the HBOR.

287.    As a direct and proximate result of the negligence and carelessness of the Defendants, as set forth above, Plaintiff has suffered damages in an amount not presently ascertained and will be proved at trial.

TWENTY NINTH CAUSE OF ACTION
(VIOLATION OF CAL. CIVIL CODE SECTION 2923.55)
Against ALL DEFENDANTS & DOES 1-100

50

288. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

289. California Civil Code section 2923.55(b)(2) requires an alleged mortgage servicer to "contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." It also requires the alleged mortgage servicer to assess the alleged borrower's financial situation and discuss options based on the situation, and to "advise the [alleged] borrower that he or she has the right to request a subsequent meeting scheduled for that purpose."

290. Additionally, section 2923.55 requires that a NOD include a declaration stating that the alleged mortgagee, alleged beneficiary, or alleged authorized representative contact the alleged borrower in person or by telephone in order to assess the alleged borrower's financial situation and explore options for the alleged borrower to avoid foreclosure.

291. On or about September 9, 2015, CLEAR RECON, which Plaintiff is informed and believes was at the request of NATIONSTAR, improperly filed a NOD on the Subject land.

292. Attached to the NOD, NATIONSTAR filed a declaration claiming that they complied with section 2923.55.

293. NATIONSTAR, however, failed to comply with the requirements of section 2923.55 by: (1) Not contacting Plaintiff in person or by telephone to assess his financial situation prior to initiating the foreclosure proceedings; (2) providing a false and deficient declaration in the NOD, stating that the "The mortgage servicer has tried with due diligence to contact the borrower as required by California Civil Code §2923.55(f), but has not made contact despite such diligence"; and (3) falsely claiming that the "due diligence efforts were satisfied."

294. In fact, Plaintiff never received any communication, in writing or by phone, informing him of his rights to foreclosure alternatives prior to the filing of the NOD, as required by law. Instead, it was Plaintiff who called NATIONSTAR several-times to ask for loss mitigation assistance, but his attempts were stonewalled as he had been in review for a loan modification for two years, and no determination had been made until shortly before the trustee's sale of the Subject land.

295. Furthermore, Plaintiff is yet to receive an accounting of his alleged Note, which prevented him from exercising his right to reinstate the alleged loan prior to the trustee's sale.

296. From 2015 to 2017, Plaintiff left NATIONSTAR multiple messages asking for help, but his calls were never answered. Each NATIONSTAR representative whom Plaintiff spoke with told

VERIFIED CLAIM

Plaintiff that they received his complete alleged loan modification application, but they have yet to review and make a determination on his alleged loan modification application.

297.    Additionally, NATIONSTAR made a false declaration when they stated in the NOD that they "tried with due diligence to contact borrower ... but [had] not made contact despite such due diligence." Such declaration is vague as there is no mention of the time, method, or even agent of NATIONSTAR who tried to contact Plaintiff, which is convenient for NATIONSTAR because no such attempts were ever made.

298.    As such, Defendants are in violation of California Civil Code section 2923.55 for not contacting Plaintiff prior to the filing of the NOD to assess his financial situation and offer foreclosure alternatives, for failing to review Plaintiffs foreclosure alternative requests, and for filing a false declaration stating that they did attempt to contact Plaintiff to offer foreclosure alternatives.

### THIRTIETH CAUSE OF ACTION
#### (VIOLATION OF CAL. CIVIL CODE SECTION 2924f)
#### Against ALL DEFENDANTS & DOES 1-100

299.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

300.    Section 2924f of the California Civil Code requires that a "notice of the sale ... be given by posting a written notice of the time of sale and of the street address and the specific place at the street address where the sale will be held ... at least 20 days before the date of sale." Section 2924f(3) further requires that "A copy of the notice of sale shall also be posted in a conspicuous place on the property to be sold at least 20 days before the date of sale."

301.    On or about February 8, 2017, CLEAR RECON improperly filed a NOS on the Subject Property while Plaintiff was in review for an alleged loan modification.

302.    Plaintiff was never served with the recorded NOS. As such, Defendants are in direct violation of section 2924f.

### THIRTY FIRST CAUSE OF ACTION
#### (Violation of California Civil Code 2924(h) Subdiv.(g)")
#### Against All Defendants & DOES 1-100

52

VERIFIED CLAIM

303.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

304.    California Civil Code 2924(h) Subd.(g) provides, "g)  It shall be unlawful for any person, acting alone or in concert with others, (1) to offer to accept or accept from another, any consideration of any type not to bid, or (2) to fix or restrain bidding in any manner, at a sale of property conducted pursuant to a power of sale in a deed of trust or mortgage. …..In addition to any other remedies, any person committing any act declared unlawful by this subdivision or any act which would operate as a fraud or deceit upon any beneficiary, trustor, or junior lienor shall, upon conviction, be fined not more than ten thousand dollars ($10,000) or imprisoned in the county jail for not more than one year, or be punished by both that fine and imprisonment."

305.    Cal. Civ. Code§ 2924h(g) seeks to protect property owners allegedly in default by ensuring fair and open bidding and the benefits of competition. The law has long provided that if a non-judicial foreclosure sale has been unfairly or unlawfully conducted, or is tainted by fraud, the trial court has the power to set it aside. It is the general rule that courts have power to vacate a foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties, (*Bank of America etc. Assn. v. Reidy* (1940) 15 Cal. 2d 243, 248 [101 P.2d 77].)

306.    As set forth above, Defendants furnished multiple times, misleading and false notice of postponement of auction sale of Plaintiff's land from the original date of July 6th, 2017 to July 20th, 2017 for unknown reasons, but after everyone was gone due to false and misleading notice of postponement of the auction sale date of Plaintiff's land, at or about 11:43 am on July 6th, 2017 and despite Defendants' announcement of postponement of sale to July 20th, 2017, Defendants went ahead and faked transferring Plaintiff's land title to an entity that does not exist and never existed at less than the half the value of Plaintiff's land, through a credit bid by a non existing entity.

307.    That is to say, the Defendant U.S. BANK NATIONAL ASSOCIATION, AS PURPORTED TRUSTEE  FOR GREENPOINT MORTGAGE FUNDINGTRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR2, based on proof positive on records, available from 5 different government websites, does not exist and never existed, it is a made up name.

53

VERIFIED CLAIM

308.    The government websites that corroborate non existence of U.S. BANK NATIONAL ASSOCIATION, AS PURPORTED TRUSTEE FOR GREENPOINT MORTGAGE FUNDINGTRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR2, beyond any shadow of any doubt, are FDIC, SEC, OCC, CFPB and Minnesota Secretary of State.

309.    Plaintiff has in his possession the authenticated audio and video capture of the announcement of the postponement of the fake auction sale by the auctioneer as well as the audio of the phone conversation with staff at Defendant Clear Recon Corp. who confirmed that the auction sale date of Plaintiff's home was postponed from July 6th, 2017 to July 20th, 2017, together with their certified transcripts and two live witnesses who are willing and able to testify under oath as to the unlawful acts committed and perfected by the Defendants on July 6th, 2017.

310.    As the direct and proximate result of Defendants' violation of law at Cal. Civ. Code 2924(h) Subdiv.(g), as set forth above, Plaintiff has suffered and continues to suffer statutory, special and punitive economic damages in an amount to be determined in Plaintiff's trial by jury at 7th Amendment.

### THIRTY SECOND CAUSE OF ACTION
### (VIOLATION OF CAL. CIVIL CODE SECTION 2924c)
Against ALL DEFENDANTS & DOES 1-100

311.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

312.    Section 2924c of the California Civil Code requires a lender to stop a foreclosure once the borrower pays the lender the entire amount due with respect to the loan. Specifically, section 2924c(2) provides in pertinent part that a person authorized to cure the default pursuant to this division does cure the default, the beneficiary or mortgagee or the agent for the beneficiary or mortgagee shall, within 21 days following the reinstatement, execute and deliver to the trustee a notice of rescission which rescinds the declaration of default and demand for sale and advises the trustee of the date of reinstatement.

313.    Furthermore, the "trustee shall cause the notice of rescission to be recorded within 30 days of receipt of the notice of rescission and of all allowable fees and costs."

VERIFIED CLAIM

314.    Courts have upheld section 2924c and determined that lenders are required to accept such funds and reinstate the loan.

315.    Here, Plaintiff sought assistance through his family and friends, and was able to collect enough money to reinstate his alleged loan. When Plaintiff called NATIONSTAR to ask for an accounting to reinstate his loan, NATIONSTAR failed to provide the accounting. Consequently, NATIONSTAR prevented Plaintiff from reinstating his loan, in direct violation of section 2924c.

316.    Plaintiff made multiple phone calls and left dozens of messages to NATIONSTAR asking for help to reinstate his alleged loan, but his calls were ignored and his requests shut down.

317.    To date, Plaintiff is willing and able to reinstate his alleged loan, but wants a proper accounting of the alleged Note because there are discrepancies in the amount owed on his alleged account. Plaintiff is yet to receive such accounting.

318.    NATIONSTAR's refusal to send an accounting of Plaintiff's alleged Note so that Plaintiff can reinstate the alleged loan is in direct violation of the HBOR and section 2924c of the California Civil Code.

## PRAYER

WHEREFORE, Plaintiff prays for a judgment against Defendants as follows:

1. For compensatory, special, general and punitive damages according to proof against all Defendants;

2. For injunctive relief to stop further transfers of the Subject land and to stay any unlawful detainer proceeding to acquire possession of the Subject land pending a judgment or settlement of this action;

3. Damages in excess of $1,000,000 which account for all back due fees, interest, foreclosure fees, legal fees, and penalties, accrued during the foreclosure process.

4. Pursuant to Business and Professions Code Section 17200, that all Defendants, their successors, agents, representatives, employees, and all person who act in concert with them be permanently enjoined from committing any acts of unfair competition in violation of 17200, including, but not limited to, the violations alleged herein.

5. For civil penalties pursuant to statute, restitution, injunctive relief and reasonable attorney's fees according to proof.

6. For reasonable attorney's fees and costs.

VERIFIED CLAIM

7. For reasonable costs of suit and such other and further relief as the Court deems proper.

DATED: January 31, 2025

All Rights Reserve Waive None

SEE CA NOTARY ATTACHMENT

By: _Faveed: Serrhy-Lard., beneficiary_
:Fareed :Sepehry-Fard©., beneficiary.

Using a notary on this document does not constitute any adhesion nor does it alter my Neutral standing *in itinere* in original Common Law Jurisdiction. The purpose for notary is verification and identification only and not for entrance into any foreign jurisdiction.

## DECLARATION

The undersigned certifies, under the laws of the State of California, California Republic and the United States of America, that to the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances regarding this pleading that:

1. It is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; And,

2. the claims, defenses, and other legal contentions are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law; And,

3. the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; And,

4. the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

56

VERIFIED CLAIM

1   Further Defendant sayeth naught.

2   **DATED**: January 31, 2025

3   All Rights Reserve Waive None

4

5

6

7   By: _Fareed: Sepehry-Fard., Beneficiary._

8   :Fareed :Sepehry-Fard©., beneficiary.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

57

VERIFIED CLAIM

**CALIFORNIA JURAT**

GOVERNMENT CODE § 8202

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of  Santa Clara

Subscribed and sworn to (or affirmed) before me on

this  31  day of  January , 20 25 , by
　　　*Date*　　　　　　*Month*　　　　　　*Year*

(1)  Fareed Sepehry-Fard

(and (2) _____ ),
　　　　　*Name(s) of Signer(s)*

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.



J. CEDILLO PADRON
Notary Public - California
Santa Clara County
Commission # 2502863
My Comm. Expires Oct 24, 2028

*Place Notary Seal and/or Stamp Above*

Signature _____
　　　　　　*Signature of Notary Public*

──────────── **OPTIONAL** ────────────

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: ___Claim___

Document Date: __01/31/25__　　Number of Pages: __58__

Signer(s) Other Than Named Above: _____

©2019 National Notary Association

Fareed Sepehry-Fard
12309 Saratoga Creek Dr.
Saratoga, CA 95070